# Staunton.

## Walter Elam, Administrator, et als. v. J. F. Ford.

### September 23, 1926.

1.  Vendor and Purchaser—*Whether Sale in Gross or Sale by Acre—Contracts of Hazard—General Rule.*—Every sale of real estate, where the quantity is referred to in the contract, and the language of the contract does not plainly indicate that the sale was intended to be a sale in gross, must be presumed to be a sale per acre. While contracts of hazard are not invalid, courts of equity do not regard them with favor. The presumption is against them.

2.  Vendor and Purchaser—*Whether Sale in Gross or Sale by Acre—Rebutting Presumption—Burden of Proof.*—While the presumption that a sale of real estate is a sale per acre and not in gross may be rebutted, this can only be effectually done by clear and cogent proof. The burden of proof is always upon the party asserting a contract of hazard, for the presumption always being in favor of a sale per acre, a sale in gross, or a contract of hazard, must be clearly established by the facts.

3.  Vendor and Purchaser—*Sale for Gross Sum—Estimate of a Given Quantity.*—Where the parties contract for the payment of a gross sum for a tract or parcel of land, upon the estimate of a given quantity, the presumption is that the quantity influenced the price to be paid and the agreement is not one of hazard.

4.  Vendor and Purchaser—*Intention of the Parties—Contract in Gross or for a Specific Quantity—Construction against Contract of Hazard.*—Whether a contract for sale of realty is a contract in gross or for a specific quantity depends, of course, upon the intention of the contracting parties, to be gathered from the terms of the contract and all the facts and circumstances connected with it. But in interpreting such contracts, the courts not favoring contracts of hazard, will always construe the same to be contracts of sale per acre wherever it does not clearly appear that the land was sold by the tract and not by the acre.

5.  Trees and Timber—*Sale of Standing Timber—Whether a Contract in Gross or by the Acre.*—The principles determining whether a contract for the sale of land is a sale in gross or a sale per acre are not applied to a sale of standing timber. A sale of timber within certain boundaries is held to be a sale in gross and is a contract of hazard, and the in-

terposition of a court of equity upon the ground of mistake is necessarily excluded.

6. TREES AND TIMBER—*Sale of Standing Timber—Whether a Contract in Gross or by the Acre—Case at Bar.*—In the instant case the deed did not convey a certain number of acres of timber, or a certain number of acres of timber land. It made no mention of the number of acres of land carrying timber, but simply conveyed in terms all of the merchantable timber located on two tracts of land containing two hundred acres, more or less. It appeared from the evidence that the vendee's assignor endeavored to secure an option on the timber by the one thousand feet or by the acre, and that the vendor refused to option except by the boundary. The assignor of the vendee and the vendee entered into a written contract in which they construed the option assigned to be a contract of hazard.

*Held:* That the circumstances and the very language of the deed plainly indicated that it was intended to be a sale in gross and not by the acre, and that the contract was one of hazard against which equity would not grant relief unless it was procured by the fraud of the grantor.

7. TREES AND TIMBER—*Sale of Standing Timber—Contract Reduced to Writing—Extrinsic Evidence—Relief in Equity—Hard Bargain.*—Where the parties to a sale of standing timber reduced their final agreement to writing, under seal, in language clear and unambiguous, which can have but one meaning, equity will refuse to give it another by interpretation, or to allow the parties to vary or contradict it by extrinsic testimony. It is not the duty of the court to relieve a party from the plain obligations of his contract simply because he may have made a bad bargain.

8. TREES AND TIMBER—*Sale of Standing Timber—Mutual Mistake.*—A contract of sale of the standing timber upon two tracts of land being a contract of hazard, there can be no recovery for shortage on the ground of mutual mistake.

9. FRAUD AND DECEIT—*Fraud in the Procurement of a Contract.*—Fraud in the procurement of a contract will, if distinctly alleged and clearly proven, vitiate it *ab initio.*

10. TREES AND TIMBER—*Sale of Standing Timber—Fraud in the Procurement of the Contract—Burden of Proof—Case at Bar.*—In the instant case the vendee in a contract for the sale of standing timber contended that he was entitled to recover for an alleged shortage in the timber because of fraud on the part of the vendor. To entitle the vendee to recover against the vendor, on the ground of fraud, the burden was on him to show by clear and convincing testimony that the vendor made to him a false representation of some material fact, which was relied on by him and that he was injured thereby.

11. VENDOR AND PURCHASER—*False Representations—Recission of the Contract.*—The false representation of a material fact constituting an in-

ducement to a contract for the purchase of real estate, on which the purchaser had a right to rely, is always ground for a recission of the contract by a court of equity. It is sufficient that the statement is material, was relied on by the purchaser, and was in the fact untrue.

12. TREES AND TIMBER—*Sale of Standing Timber—False Representations— Purchase by Vendee from one Holding Option on the Property—Case at Bar.*—In the instant case the vendee of standing timber contended that he was entitled to recover for an alleged shortage in the timber because of fraud on the part of the vendor The vendor sold the timber under an option contract to another and the deed was made by the vendor to the vendee at this other's request. The vendee admitted he never saw the vendor but once and that was seven or eight months after the deed was executed. Under these circumstances it is difficult to understand how the vendee could have been induced by the vendor to buy the timber when he had no communication with the vendor on the subject.

13. TREES AND TIMBER—*Sale of Standing Timber—False Representations— Expression of Opinion—Case at Bar.*—In the instant case the vendee of standing timber contended that he was entitled to recover for an alleged shortage in the timber because of fraud on the part of the vendor in misrepresenting the number of acres in the tracts which contained the timber. The vendor did not know the number of acres, and if he made any statement to the vendee as to the acreage, it was necessarily a mere opinion and not sufficient to avoid the contract.

14. VENDOR AND PURCHASER—*Recission—Misrepresentations—Expression of Opinion.*—A misrepresentation which will avoid a deed or contract for the sale of real estate must be a statement of a fact, and not merely an opinion. It must have been made for the purpose of inducing the deed or contract, and relied upon as a fact by the party complaining and must have been material and untrue.

15. TREES AND TIMBER—*Sale of Standing Timber—Misrepresentations— Reliance on the Representation—Case at Bar.*—In the instant case there was evidence that the vendor of standing timber told the vendee there were two hundred acres of timber on the land. That this statement was not relied on however by a purchaser from the vendee appears from his bill in which he stated that he sent an expert estimator of timber to estimate the quantity of merchantable timber on the tract of land described in the contract.

*Held:* That the statement of the vendor that there were two hundred acres of timber on the land, if he made it, was immaterial and did not result in injury to the purchaser from the vendee.

16. TREES AND TIMBER—*Sale of Standing Timber—Fraud on Part of the Vendor—Misrepresentations as to the Number of Acres of Timber—Case at Bar.*—In the instant case the vendee of standing timber contended that he was entitled to recover for an alleged shortage in the timber because of a misrepresentation by the vendor of the number of acres

of timber land. The vendee sent an expert estimator upon the land and this estimator reported that the timber on the land would cut more than 1,000,000 f. et of lumber. It appeared in the evidence that the timber actually conveyed by the deed would manufacture more than 1,000,000 feet of lumber, therefore, the area of the land carrying timber was immaterial.

*Held:* That the representation of the vendor as to the number of acres, if made, was immaterial.

Appeal from a decree of the Circuit Court of Wise county. Decree for complainant. Defendant appeals.

*Reversed.*

The opinion states the case.

*S. H. Bond, A. M. Vicars, R. P. Bruce* and *L. P. Fraley,* for the appellant.

*O. M. Vicars,* for the appellees.

WEST, J., delivered the opinion of the court.

On March 8, 1920, W. L. Elam entered into a written contract with C. M. Wolfe, by which he granted to Wolfe the exclusive right, for a period of ten days, to buy or sell, at the price of $10,000, "all the merchantable timber from twelve inches in diameter and up located on the south side of Thorofare Ridge, known as the James Elam and John Riner tract of land, containing by estimation 200 acres;" and gave the purchaser eighteen months from the date of payment of the purchase money in which to remove the timber.

On March 16, 1920, Wolfe assigned his interest in the foregoing option to J. F. Ford.

By deed dated March 16, 1920, W. L. Elam, at the request of C. M. Wolfe and in consideration of $10,000, paid in cash, conveyed the timber described in the

option to J. F. Ford. Soon thereafter W. L. Elam died testate.

On the first Monday in August, 1922, J. F. Ford filed his bill in equity against C. M. Wolfe, Walter Elam, Hobart Elam, Catherine Osborne and Walter Elam, administrator of W. L. Elam, deceased, sole devisees named in the will of W. L. Elam, alleging that W. L. Elam showed C. M. Wolfe and Jesse Beam, an experienced estimater of standing timber, the boundary of the timber in a general way, and stated to them then that there were 200 acres of timbered land, exclusive of the cleared land and barren portions of the uncleared land; that Beam, as the agent of Ford, in making an estimate of the number of feet of lumber in the timber on the land, relied on the statements and representations of W. L. Elam as to the number of acres of timbered land included in the option contract between Elam and Wolfe, and reported to Wolfe that the timber on the tract would cut more than a million feet of lumber; that later he had the timber surveyed and ascertained that there were only 90.65 acres of timber instead of 200 acres; that the statements and representations made by W. L. Elam were fraudulently made for the purpose of deceiving and defrauding the complainant, or through a mistake, and that complainant believed the representations to be true and relied on them; that complainant is entitled to recover against W. L. Elam's estate the amount paid W. L. Elam in excess of the number of acres of timber contained in the deed of conveyance from W. L. Elam to complainant.

Defendants demurred to and answered, denying the allegations of complainant's bill, and alleging that the sale was by the boundary and not by the acre.

Robert T. Markle, surveyor, acting under a decree

of the court, surveyed the land in December, 1923, and reported to the court that the lands cut over by A. B. Quillen, who purchased the timber from J. F. Ford, contains 96.61 acres; that the second growth timber covers 81.43 acres; that the cleared land covers 51.9 acres; that there remains 2.14 acres of merchantable standing timber uncut, outside of the second growth timber, and that the two tracts contain in the aggregate 231.87 acres.

Depositions were taken and filed by both complainant and defendants. Upon a final hearing the court was of opinion that "the sale of the timber described in the contract from W. L. Elam to C. M. Wolfe and the deed from W. L. Elam to the plaintiff was a sale by the acre," and so adjudged and decreed that the complainant recover against Walter Elam, administrator of the estate of W. L. Elam, deceased, the sum of $5,169.50, with interest from the 18th day of March, 1920, and his costs. From that decree an appeal was allowed to this court.

The appellants contend that the court erred in holding that the sale was by the acre and not in gross, or by the boundary.

[1, 2, 3, 4] In *Boshen v. Jurgen's, Ex'rs,* 92 Va. 759, 24 S. E. 390, Keith, P., speaking for the court, quoted with approval the following language as containing the principles which have been affirmed in numerous other cases by the court: "Every sale of real estate where the quantity is referred to in the contract, and where the language of the contract does not plainly indicate that the sale was intended to be a sale in gross, must be presumed to be a sale per acre; that, while contracts of hazard are not invalid, courts of equity do not regard them with favor. The presumption is against them, and, while such presumption

may be repelled, it can only be effectually done by clear and cogent proof; that the burden of proof is always upon the party asserting a contract of hazard, for the presumption always being in favor of a sale per acre, a sale in gross, or contracts of hazard, must be clearly established by the facts; that where the parties contract for the payment of a gross sum for a tract or parcel of land, upon the estimate of a given quantity, the presumption is that the quantity influences the price to be paid, and that the agreement is not one of hazard; that whether it be a contract in gross or for a specific quantity, depends, of course, upon the intention of the contracting parties, to be gathered from the terms of the contract and all the facts and circumstances connected with it. But in interpreting such contracts, the courts, not favoring contracts of hazard, will always construe the same to be contracts of sale per acre wherever it does not clearly appear that the land was sold by the tract and not by the acre." Citing *Bleasing* v. *Beaty*, 1 Rob. (40 Va.) 287; *Crawford* v. *McDaniel*, 1 Rob. (40 Va.) 448; *Triplett* v. *Allen*, 26 Gratt. (67 Va.) 721, 21 Am. Rep. 320; *Watson* v. *Roy*, 28 Gratt. (69 Va.) 698; *Benson* v. *Humphreys*, 75 Va. 196.

[5] While these principles have been applied frequently by this court in cases where there was a mistake as to quantity in the sale of land, and the acreage influenced the price at which the land was purchased, we can find no case, and none has been cited, in which they have been applied to a sale of standing timber.

In the case of *Shoemaker* v. *Cake*, 83 Va. 4, 1 S. E 387, which involved the right of a purchaser of standing timber to an abatement of the purchase price because the land from which the timber was cut did not contain 400 acres, but only 218¾ acres. Judge

Lacy, speaking for the court, said: "But these principles (governing the measure of compensation in cases of mistake as to quantity in the sale of lands), have no application to a case like this. There is no sale of any quantity of land. The sale is of a lot of timber. There is no estimate of the quantity—all the timber within certain boundaries is sold. It is more to be likened to a case where the parties by agreement make the estimated quantity conclusive by stipulating to dispense with a survey, and to be governed in all events by the given estimate, which makes the sale a sale in gross, a contract of hazard, and necessarily excludes the interposition of a court of equity upon the ground of mistake. A sale in gross, when applied to the thing sold, means a sale by the tract, without regard to quantity, and in that sense is *ex vi termini* a contract of hazard." Citing *Russell* v. *Keeran*, 8 Leigh (35 Va.) 9. The court held that the sale was in gross, and refused to allow any abatement in the purchase price. It was also insisted in that case that the contract was procured by the fraud of the plaintiffs in falsely representing the quantity of land within the designated boundaries where the timber was growing. The evidence showed that the vendee of the timber, who was an experienced lumberman, "went upon the land where the timber was growing and was shown through the woods, until he expressed himself satisfied." The court held that there was no fraud.

Let us apply the principles enunciated in this case to the facts in the instant case. The deed from W. L. Elam to J. F. Ford does not convey a certain number of acres of timber, or a certain number of acres of timber land. It makes no mention of the number of acres of land carrying timber, but simply conveys in

terms *all of the. merchantable timber* from twelve inches in diameter and up, located *on* the James Elam and John Riner tracts, containing *200* acres, more or less. The very language of the deed plainly indicates that it was intended to be a sale in gross, and not by the acre. Besides, it appears from the evidence, without contradiction, that Wolfe endeavored. to secure an option on the timber by the thousand feet or by the acre, and that W. L. Elam refused to option it except by the boundary, and stated he would not sell it any other way. C. M. Wolfe testified, when asked what representations Elam made to him, at the time he obtained the contract, with reference to the number of acres of timber he was selling, answered: "He told me he had the timber there and he would sell me the timber on the John Riner and James Elam tracts of land for $10,000, estimated 200 acres." And the option gave him the right to buy "all merchantable timber    *    *    *    on the James Elam and John Riner tracts containing by estimation 200 acres." In addition, at the time the option was assigned by Wolfe to Ford, he and Wolfe entered into a written contract in which they construed the option to be a contract of hazard. The contract says: "If said *boundary* of *timber* should cut out one and one-fourth million feet of lumber, then in that event the said party of the first part is to pay to the said party of the second part one thousand dollars more, making in all $2,500.00 should said *boundary* cut out the above mentioned amount."

The acreage of the land carrying timber not being referred to in the option or in the deed, and it clearly appearing from both instruments that the timber was sold by the boundary and not by the acre, we are of the opinion that the contract for the sale of the

timber is a contract of hazard against which equity should not grant relief, unless it was procured by the fraud of the grantor in the deed.

[7] The parties having reduced their final agreement to writing, under seal, in language clear and unambiguous, which can have but one meaning, equity will refuse to give it another by interpretation, or to allow the parties to vary or contradict it by extrinsic testimony. It is not the duty of the court to relieve a party from the plain obligations of his contract simply because he may have made a bad bargain.

Appellee, J. F. Ford, also contends that he is entitled to recover for the alleged shortage in timber because of a mutual mistake and fraud on the part of W. L. Elam.

[8, 9] The contract being a contract of hazard, there can be no recovery on the ground of mutual mistake. It is conceded that fraud in the procurement of a contract will, if distinctly alleged and clearly proven, vitiate it *ab initio.*

[10] To entitle the complainant to recover against W. L. Elam's estate for the alleged shortage in lumber, on the ground of fraud, the burden is on him to show by clear and convincing testimony that Elam made to him a false representation of some material fact, which was relied on by him and that he was injured thereby.

[11] "The false representation of a material fact constituting an inducement to a contract for the purchase of real estate, on which the purchaser had a right to rely, is always ground for a rescission of the contract by a court of equity. * * It is sufficient that the statement is material, was relied on by the purchaser, and was in fact untrue." *Wilson, Trustee,* v. *Carpenter,* 91 Va. 183, 21 S. E. 243, 50 Am. St. Rep. 824.

[12, 13] It must be borne in mind that Elam sold the timber to C. M. Wolfe and Wolfe sold it to Ford at a profit, the deed being made by Elam to Ford at Wolfe's request. Ford admits he never saw Elam but once and that was seven or eight months after the deed had been executed. It is difficult to understand how Ford could have been induced by Elam to buy the timber from Wolfe when he had no communication with Elam on the subject, until long after the sale was consummated. Elam did not know the number of acres carrying merchantable timber, and if he made any statement to Wolfe as to the acreage, it was necessarily a mere opinion and not sufficient to avoid the contract.

[14] In *Hicks* v. *Wynn*, 137 Va. 186, 119 S. E. 133, syllabus, we find this: "A misrepresentation which will avoid a deed or contract for the sale of real estate must be a statement of a fact, and not merely an opinion. It must have been made for the purpose of inducing the deed or contract, and relied upon as a fact by the party complaining and must have been material and untrue." See also *Jordan* v. *Walker*, 115 Va. 117, 78 S. E. 643; *Max Meadows Co.* v. *Brady*, 92 Va. 77, 22 S. E. 845.

Elam said in the option and in the deed that the *tract of land* contained *by estimation 200 acres* and all the parties know there was about fifty acres of open land in the tract. Elam went on the land with Wolfe and pointed out to him the boundaries, and gave him ten days in which to investigate for himself.

[15] If, as testified, Elam told Wolfe there were 200 acres of timber on the land, that statement was not relied on by Ford, for he states in his bill that he sent Jesse Beam, an expert estimator of timber with thirty years experience, to estimate the quantity of merchant-

able timber on the tract of land, described in the option contract; and that Beam reported that the timber on the 200 acres would cut more than one million feet of lumber. If Elam told Wolfe there were 200 acres of timber on the land, the statement was immaterial, and did not result in injury to Ford. When asked: "What led you to think you were buying 200 acres of timber?" Ford replied, "Mr. Beam's statement, and also the contract, the option contract."

It appears from the evidence that A. B. Quillen, who undertook to cut and manufacture the timber into lumber, actually cut and removed only about one-half of the timber which was conveyed to Ford under the deed from Elam. After the time had expired in which the grantee had the right to cut and remove the timber, and Quillen had finished cutting and moved his mill from the premises, at the request of the defendants, W. J. Campbell, J. H. W. Holbrook and W. J. Hillman, experienced lumbermen, went on the land to ascertain how many logs and how much timber twelve inches in diameter and up Quillen had left upon the land. They were familiar with the provisions of the option and the deed and took with them a copy of the map of the land made by Surveyor Markle. They spent two or three days going over the premises, counting and measuring the logs and trees which Quillen had a right to but did not remove from the land.

W. J. Campbell testified that they found on the "cut over" land, which is shown in blue on the map, 1,799 trees, which were estimated to contain 450,502 feet of lumber; that they found in the second growth, shown in yellow on the map, 440 merchantable trees, estimated to contain 82,317 feet of lumber; that they found on that part of the land designated in red on the

map 136 trees estimated to contain 35,555 feet of lumber. They included in their estimates only merchantable timber of the size of twelve inches in diameter and up. The total amount of lumber found by Campbell was 568,374 feet. Quillen testified that he removed from the land 498,923 feet of lumber.

[16] The area of the land carrying timber is immaterial, since it appears from the foregoing figures that the timber actually conveyed by the deed would manufacture 1,067,297 feet of lumber, which is, practically speaking, the amount which Beam estimated could be cut from 200 acres of timber.

For the foregoing reasons, we are of the opinion that the sale of the timber was in gross or by the boundary, and not by the acre; and that the complainant has failed to prove the contract was procured by fraud.

The decree under review will be reversed and complainant's bill dismissed at his costs.

*Reversed.*