In re Emma Rovenia GRAY, Debtor.

Emma Rovenia GRAY, Plaintiff,

v.

ATLANTIC PERMANENT SAVINGS AND LOAN ASSOCIATION, INC., Defendant.

Bankruptcy No. 84–01659–N.

United States Bankruptcy Court, E.D. Virginia, Norfolk Division.

May 29, 1985.

Robert Roussos, of Smith & Tolerton, P.C., Norfolk, Va., for plaintiff.

Ann Sullivan, of Crenshaw, Ware & Johnson, and R. Clinton Stackhouse, Jr., of Stackhouse, Rowe & Smith, Norfolk, Va., for defendant.

### MEMORANDUM OPINION AND ORDER

HAL J. BONNEY, Bankruptcy Judge.

If . . .

she had read the raft of papers;

they had had a customer-oriented system in operation.

"Pity the Unicorn,
Pity the Hippogriff,
Souls that were never born
Out of the land of If!"

—Ostenso

We might wish people didn't become ill, or paid their bills, or behaved themselves, but human nature is something else. And how else would society support such a large bar? I have a friend who litters with respect for someone's employment in mind.

No, no facetiousness or wit here, but we do see such a vast slice of wasted human resources. At least an inefficiency which requires its toll. And such as I sit upon the throne to pass upon it.

### Findings of Fact

The cast of this sad tale is a varied one and assume, know from the onset that the findings of fact are, must be, based chiefly on the Court's observation of the witnesses, their demeanor, their believability, their credibility, etc. *Zenith Radio Corporation v. Hazeltine Research, Inc.*, 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969); *In Wood Laboratories v. Ives Laboratories*, 456 U.S. 844, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982); *N.L.R.B. v. Walton Manufacturing*, 369 U.S. 404, 82 S.Ct. 853, 7 L.Ed.2d 829 (1962); *Miller v. Mercy Hospital, Inc.*, 720 F.2d 356 (4th Cir.1983); *Gilmer v. Woodson*, 332 F.2d 541 (4th Cir. 1970), cert. denied, 379 U.S. 834, 85 S.Ct. 67, 13 L.Ed.2d 42; *Davis v. Culpepper*, (No. 73–790–N, D.Ct., E.Va., 1974); *United Virginia Bank v. Gary*, (No. 83–499–NN, D.Ct., E.Va., 1984).

Emma Gray is a Chapter 13 debtor seeking to unravel her financial woes by way of a confirmable plan. Her woes began when she purchased for potential rental purposes two houses at 1426 and 1430 on Norfolk's West 38th Street in Lambert's Point. (They are adjacent. I do not know where they intended to place 1428.) The houses, like much rental property, badly needed repairs and, indeed, the City's Department of Community Improvement had ordered that the properties be brought into compliance with the Code. Accordingly, Mrs. Gray sought a contractor and H.M. Hawkins, Jr., President of Rite-Way Home Improvement Co., found his way to her porch.

He wore more hats than Hydra had heads.

Hawkins testified that it "would have" required three visits in order to have all of the papers in the transaction signed. Gray disputes this and the Court believes her. She was a clear, certain witness who recalled well without contradiction and without impeachment. He appeared *once*, in late August 1980, on her porch, never explaining anything, and presenting a raft of papers for her to sign covering everything. To her rue she did.

It cannot be overlooked that Hawkins purchased at foreclosure other property of Mrs. Gray, 300—27th Street, the point being he was wheeling all around.

Further Hawkins' home improvement venture failed and he filed bankruptcy in 1984. (No. 84–00035–N)

Hawkins was "an approved contractor" for Atlantic Permanent Savings and Loan Association, Inc., and handled *all* aspects of the loan for Atlantic Permanent. Gray, as she anticipated she would having dealt with S & Ls previously, was never called to Atlantic Permanent, but rather dealt solely with Hawkins, lender's agent and contractor. A vice president of Atlantic Permanent admitted she was never seen by AP and was not even called to the settlement nor given a copy of the statement.

The result, however, was to place a deed of trust on the two properties based upon a

note for $94,584.00 for loans of $17,400.00 and $16,380.00.

Hawkins was all things to all people: he alone signed the AP settlement statements, he was the notary on the deed of trust, he signed the advance agreements and completion certificates. So, Mrs. Gray signed everything from a loan application to completion certificates, at one time, and the work commenced.[1]

Although the City Department of Community Improvement approved the "finished" work and issued certificates thereto, Gray disputes that the work was completed and that what was completed was done in a workmanlike manner. She is suing under bankruptcy law to have the contract rejected, chiefly on the grounds of fraud.

The Court finds her contentions are valid, factually.

The most competent, independent witness was John Sadler, a home improvement contractor.[2] Based upon a detailed personal inspection, Sadler covered on the stand the City list of mandated corrections, item by item, and this is reflected in considerable detail on the record. [Plaintiff's exhibit # 1] He was extremely thorough and exhibited an expertise and grasp no other has. He told what had been completed, what had not been, what was done in a workmanlike manner and what wasn't.

He made his inspection in August of 1984 and concluded the work was neither completed nor performed in a workmanlike manner. By way of example, only he went under the houses and found that sagging floors were being supported by a few bricks piled up. By way of further example, he was supported in his finding of a faulty paint job by Mrs. Gray who testified it washed off in six months.

Sadler concluded:

| | Value of work completed | Cost to complete[3] |
|---|---|---|
| 1426 | $ 5,115 | $12,340 |
| 1430 | 12,340 | 8,902 |

Sadler is disputed by defendant's witness, an inspector for the City Department of Community Improvement who referred to his notes made at the time of his inspection, October 21, 1980, for 1426; December 18, 1980, for 1430. He said the improvements passed the Code's requirements.

But he was vague and at times inaccurate. The Court inquired as to the type of roof each structure had, as Mrs. Gray said they continued to leak, and he replied "metal." One is slate and the other composition. Further, admittedly, he approved several items, in advance, before they were completed in anticipation they *would be*.

Tacit approval on the record means nothing if it is surface and will not stand a workmanlike while. While there is no specific time warranty, it hasn't been done right if the paint washes off within six months giving cause for the City inspection fellows to come around again crying, "Out of Code!" The homeowner should be able to rely on the work lasting a workmanlike time. It clearly did not.

### The Court Takes a Gander

On April 29, 1985, these two eyes and senses went to the premises for a viewing and while it was several years and some tenants later, it appeared that if the work had been completed and in a workmanlike manner, the property would not be in its present condition.

By way of examples, (1) the Court found the exterior walls to appear as if they had not been painted in decades. Indeed, Atlantic Permanent's own real estate inspector testified he could not now tell the color of the house. (2) The floors sagged still, particularly in the rear of the dwellings. (3) The covering used on the floors

---

**1.** Atlantic Permanent, through its vice president, testified that the policy has since been changed and it would now have a prospective borrower come in.

**2.** We all work at a distinct disadvantage as it is now 1985 and we are looking back to work performed in late 1980. We must do the best we can. The law often labors with this disadvantage, even faced with piecing together a crime many years later.

**3.** The cost to complete is in 1985 figures.

throughout both houses was unbelievably wafer thin. There was no way it could provide protection from such foes as water. And, too, it was everywhere loose and up.

The Court's viewing would have to agree, generally, with Sadler's conclusions.

Lawyers feel a case rises or falls on every shred, or is it straw, of evidence. To address each would be to but staple an order to the transcript. The evidence clearly proves three basic facts:

1. Mrs. Gray was tendered everything to sign at once.

2. Hawkins represented Atlantic Permanent as well as his own interests.

3. The work contracted for was not completed and portions that were not done in a workmanlike manner.

4. Sadler's testimony as to the value of the work completed and the cost to complete is unrebutted.

Conclusions of Law [4]

Prior to trial Atlantic Permanent filed a motion for summary judgment which was argued and denied. It bears inclusion as it is a basic legal point. Gray relies on the language of the note which makes the holder of it subject to all claims and defenses which she could make against the seller of the services (Rite-Way).

Atlantic Permanent disputes this saying the paragraph, in the note (in bold print), should not be there since she is not a consumer within the meaning of the Federal Trade Commission Regulations. AP argues the language is directly therefrom and has no application here. The note speaks for itself:

---

NO. __1__

$94,584.00

## Atlantic Permanent
### SAVINGS AND LOAN ASSOCIATION
#### INCORPORATED

NORFOLK, VA., _September 5th_ 198_0_

FOR VALUE RECEIVED, the undersigned promise to pay to the order of ATLANTIC PERMANENT SAVINGS AND LOAN ASSOCIATION, INCORPORATED, of Norfolk, Virginia, negotiable and payable without offset at its office in the City of Norfolk,

Virginia, the sum of NINETY-FOUR THOUSAND FIVE HUNDRED EIGHTY-FOUR DOLLARS AND 00/100————

—————————————————Dollars ($94,584.00), in monthly installments of $203.00 & 191.10 .

commencing on the __20th__ day of __October__ , 19_80_, and continuing on the same day of each and every month thereafter until said indebtedness shall have been fully paid, and to pay a late charge of 5 per cent of the monthly payment if said payment is not received by holder within 15 days of due date.

In the event of default in the payment of any installment, or in the observance of any convenant contained in any deed of trust which may secure the payment hereof or prior deed of trust of record, the entire unpaid principal balance shall, at the option of the holder hereof, forthwith become due and payable, and the undersigned hereby constitutes ———————————————————

___John C. Lumpkin_____ as their attorney in fact for the purpose of confessing judgment hereon, in the event of default, in the Circuit Court of the City of Norfolk, Virginia, for the amount then due hereunder, including costs and fees as herein provided Borrower may prepay this loan in full or in part and rebate will be computed by the Rule of 78's.

The endorsers waive their homestead exemption as to this debt; waive presentment, demand, protest and notice; agree that advances may be made from time to time hereunder and that the time of payment of this note may be extended without notice to or consent of makers or endorsers; and agree that, in case of default, they will pay all costs of collection which may be incurred, including attorneys fee.

**NOTICE: Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or service obtained with the proceeds hereof. Recovery hereunder by the debtor shall not exceed amounts paid by the debtor hereunder.**

_____(SEAL)
Emma R. Gray
_____(SEAL)

_____(SEAL)

_____(SEAL)

---

4. With additional facts as may be helpful.

But the note makes no reference to FTC Regulations. That certain language borrowed therefrom is of no moment. Drafters of paper draw classic wording from many sources.

Atlantic Permanent would fly the double standard. It wants Gray to live up to the $94,584.00 aspects, but would avoid language that now puts it to the wall. Now, it realizes it made a mistake and wants out. The contract cannot now be altered. The parol evidence rule is sacred, approaching sainthood. The contract speaks for itself. Indeed, there have been no requests here to alter the contract. *Whitt v. Godwin*, 205 Va. 797, 139 S.E.2d 841 (1963); *Walker and Laberge Co. v. First National Bank*, 206 Va. 683, 146 S.E.2d 239 (1966); *Globe Iron Construction Co. v. First National Bank*, 205 Va. 841, 140 S.E.2d 629 (1965); *In re Gresham*, 311 F.Supp. 974 (E.D.Va. 1970); *In re Westbrook Foods, Ltd.*, 7 B.R. 100 (Bankr.E.D.Va.,1980). The Court finds the paragraphs binding on Atlantic Permanent. Gray can look to it for redress. Rite-Way has gone the wrong way.

Mrs. Gray pleads that she knew nothing relative to what she signed. While the Court finds an unequal bargaining position between Hawkins and her, she knew something—tired as she claims she was, she had opportunity to read the papers. I don't think she would have understood all and I don't feel she would have gotten an independent explanation from Hawkins. Certainly it would have been more equal in the offices of Atlantic Permanent.

She knew she wanted work done. She was agreeable to have Hawkins/Rite-Way do it and she knew she required financing. It was fraudulent to have everything stuck under her nose, it was fraud to have her sign completion certificates in advance as it was fraud to preclude her from a settlement where final concerns might be shared both ways. Such a course of dealing is fraudulent. It shreads the contract. See following.

Gray argues the contract was not only fraudulently induced, but is an executory one capable of being rejected, under the Countryman [5] test adopted by the Fourth Circuit, United States Court of Appeals. It is indeed executory pursuant to 11 U.S.C. Section 365, for it is one

> "'under which the obligations of both the bankrupt and the other party to the contract are so far unperformed that the failure of *either* to complete the performance would constitute a material breach excusing the performance of the other.'" *Gloria Manufacturing Corporation v. I.L.G.W. Union*, 734 F.2d 1020 (4th Cir. 1984), emphasis added.

Adopted again in *Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043 (4th Cir.1985). Under the terms of the note, Atlantic Permanent is tarred with the sins of Rite-Way and, consequently, much remains to be performed.

Yet, there is a greater error that falls to Atlantic Permanent. It is the fraudulent inducement for Gray to sign. Consider the unequal bargaining position of the parties and the single event where so much was stuck under her nose at the mischievous rendezvous on the porch, particularly to have completion certificates tendered at the onset of the contracting. This is a course of dealing which cannot be excused or circumvented. It is fraud, out-and-out. And such contracts are not just voidable, they are void *ab initio*.

> "Fraud in the procurement of a contract will, if distinctly alleged and clearly proved, vitiate it ab initio." *Pate v. Southern Bank & Trust Co.*, 214 Va. 596, 203 S.E.2d 126 (1974).

Also *Elam v. Ford*, 145 Va. 536, 134 S.E. 670 (1926); *Millboro Lumber Co., Inc. v. Augusta Wood Products Corp.*, 140 Va. 409, 125 S.E. 306 (1924); *Golf Ranch Resort Motel, Inc. v. Tar Heel Mortgage Co.*, 341 F.Supp. 846 (E.D.Va.1972).

The "contract" between Gray and Atlantic Permanent is void.

Good lawyers have a tendency to make a federal case of every matter and in an

---

5. Vern Countryman, Professor of Law, Harvard Law School.

abundance of caution to overplead. Gray argues 11 U.S.C. Section 1107, but that pertains in Chapter 11 cases which this is not. Further, Gray seeks to make herself a bona fide purchaser of real property under 11 U.S.C. Section 544(a)(3). That has no application here. Nor need the Court address Gray's efforts to set aside the deed of trust on the legal basis of Hawkins' notarizing it. If the contract is void, all that follows is of no legal effect. We'll mete out justice in a moment.

### Setting Things Right

Setting things right is impossible to do. We cannot put Humpty back on the wall again. Factually, we have found (1) acts of fraud and (2) an awful job and that only partially done which leads to the legal result of rejection of contract and, really, no contract at all since it was fraudulently induced. What to do?

Fortunately, we possess what other courts do not have a lot of—equity. The bankruptcy court is primarily a court of equity. *Katchen v. Landy,* 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966); *Bank of Marin v. England,* 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966); *Braddy v. Randolph,* 352 F.2d 80 (4th Cir.1965); *Brockington v. Scott,* 381 F.2d 792 (4th Cir.1967).

It would not be an equitable result to simply allow rejection of the contract; Atlantic Permanent could seek damages upon rejection. The higher legal implication obtains: no contract because of fraud.

Under any theory, then, is AP entitled to anything? Should Gray pay anything? I think not. It could be argued that Gray should pay the value of the work completed, i.e., $5115 for 1426 and $12,340 for 1430. However, it is clear from the facts that she never really benefited from what was done. It was of no value to her. As she testified, it was "cleaned but not repaired." It's the total job she needed; she got precious little.

Should Atlantic Permanent be compelled to complete the job? Gray had previously requested this and it was refused. Now it would not make sense.

The fault is Rite-Way's, inherited by Atlantic Permanent because it wasn't minding the store. It was carelessly wording its negotiable paper and it reposed in Hawkins what it should have been overseeing itself. And that's unfortunate. Although the legal effect is the same, there was never any guilty scienter on the part of Atlantic Permanent; it was pure carelessness. As a result, it alone must face up to the consequences.

The indebtedness of Emma Rovenia Gray to Atlantic Permanent Savings and Loan Association, Inc., is hereby purged, cancelled, set aside. The deed of trust against the properties shall be released forthwith. Gray shall have no monetary award from Atlantic Permanent, nor it from her.

IT IS SO ORDERED.