COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, McClanahan and Senior Judge Coleman
Argued at Richmond, Virginia


STEVEN PAUL O'CONNOR

                                              MEMORANDUM OPINION* BY
v.        Record No. 2299-02-4          JUDGE ELIZABETH A. McCLANAHAN
                                                  DECEMBER 9, 2003
LORELEI O'CONNOR


                FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                        Jonathan C. Thacher, Judge

        James Ray Cottrell (Martin A. Gannon; David H. Fletcher;
        Christopher W. Schinstock; Kyle F. Bartol; Gannon & Cottrell,
        on briefs), for appellant.

        Susan Massie Hicks (Susan Hicks & Associates, on brief), for appellee.


        Steven Paul O'Connor (husband) appeals from a decision of the circuit court holding that

a memorandum of understanding between husband and Lorelei O'Connor (wife) was a binding

and enforceable agreement, requiring only the drafting of a final formal property settlement

agreement.  In his appeal from the final decree of divorce, husband enumerates thirteen

assignments of error, which present two questions for this Court to address:  (1) whether the trial

court erred in finding that the parties intended the memorandum of understanding to be a final

agreement not requiring the parties to fulfill certain conditions precedent before executing a

separation and property settlement agreement; and (2) whether the trial court abused its

_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

discretion in awarding wife attorney's fees and in setting a supersedeas bond amount.[1]  For the

following reasons, we affirm the trial court.

## I.  Background

Husband and wife were married on September 6, 1986.  Two children were born of the

marriage, one in 1990 and another in 1992.  On September 1, 2000, wife filed a bill of complaint

for divorce against husband.  The trial court set a *pendente lite* hearing on custody, child support

and spousal support for October 26, 2000.  Just prior to that hearing, the parties negotiated a

memorandum of understanding (memorandum).  The memorandum was signed by both parties,

witnessed by both parties' counsel, and presented to the trial court on the morning of the hearing

as a resolution of all the issues that were to be addressed in the hearing, including "all issues of

property, support and custody."  While the memorandum addressed all substantive issues

between the parties, it required the terms of the memorandum to be incorporated into a "fully

integrated Separation and Property Settlement Agreement" including "standard provisions."  The

parties represented to the trial court that because the memorandum was drafted and agreed to just

prior to the hearing, they did not have time to include all of the usual standard paragraphs in the

agreement.  At the request of the parties, the trial court entered an agreed order incorporating the

memorandum and ordering the parties to comply with the terms of the memorandum.

---

[1] Husband's question presented XII (or K), contending that the trial court erred in entering a final decree of divorce incorporating the "Separation, Support, Custody and Property Settlement Agreement" dated May 22, 2002, and in granting the wife a divorce from the husband pursuant to Code § 20-91(9)(a) does not merit our consideration.  Husband's brief does not address how the trial court erred with respect to Code § 20-91 or provide any legal authority with regard to the question presented.  Rule 5A:20(e) requires the appellant's brief to include, among other things, the "principles of law, the argument, and the authorities relating to each question presented."  Statements unsupported by "argument, authority, or citations to the record" do not merit appellate consideration.  Thomas v. Commonwealth, 38 Va. App. 319, 321 n.1, 563 S.E.2d 406, 407 n.1 (2002); Dickerson v. Commonwealth, 36 Va. App. 8, 15, 548 S.E.2d 230, 234 (2001); Bennett v. Commonwealth, 35 Va. App. 442, 452, 546 S.E.2d 209, 213 (2001); Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992).

Shortly thereafter, the parties began negotiating the separation and property agreement pursuant to the memorandum terms. Several draft agreements, which included standard provisions and language that disclosures had been made, were proposed by both parties, but they could not agree upon acceptable language. However, the parties continued to abide by the terms of the memorandum, pursuant to the agreed order. In light of the parties' continuing inability to reach agreement on the standard provisions, husband requested that wife provide disclosures to which he claimed he was entitled pursuant to the memorandum. When wife refused to provide the disclosures, husband filed a motion to enforce compliance with the memorandum.

The chancellor heard oral argument on whether the provisions of the memorandum required disclosures or other conditions precedent before the parties could finalize the separation and property settlement agreement. The provisions of the memorandum at issue read, in pertinent part:

> B. The parties desire to resolve all issues of property, support and custody.
>
> THEREFORE, the parties are entering into this Memorandum of Understanding to set out the essential terms of custody, support and property division which they intend to have incorporated into a fully integrated Separation and Property Settlement Agreement.

Also at issue is section 9 of the memorandum, under the title of "Miscellaneous" which reads in pertinent part:

> The parties agree that this Memorandum shall be incorporated into a court order which shall be submitted to the Fairfax County Circuit Court on October 26, 2000.
>
> The Separation and Property Settlement Agreement shall contain standard provisions including but not limited to: indemnification, full disclosure and reliance on disclosures, releases and reimbursement for counsel fees for enforcement.

The chancellor's letter opinion stated:

> [T]his Court does not read the Memorandum of Understanding to provide for further disclosures involving either party's finances or personal information. The only remaining issue in this case is to draft a property settlement agreement, in accordance with the Memorandum of Understanding, including the proper standard provisions.

The court also found that the subsequent acts of the parties, which conformed to their agreed rights and duties in the memorandum, indicated that neither party anticipated further disclosures in order for the memorandum to be binding and enforceable. On February 11, 2002, the chancellor entered an order incorporating the findings and rulings of the letter opinion.

On February 14, 2002, wife filed a motion to compel husband to execute a separation and property settlement agreement as provided in the memorandum and requested the court to award her attorneys' fees. After hearing oral argument, the court ruled from the bench ordering execution of the separation and property settlement agreement. On the issue of attorneys' fees, after considering supplemental briefs, the court issued a letter opinion, holding that, although the memorandum did not provide for attorneys' fees, Code §§ 20-99(5) and 20-103(A)(ii) authorized the court to award attorneys' fees, and granted wife $8,193.54 in fees. The court incorporated the letter opinion in an order dated May 3, 2002. Husband filed a motion to reconsider, which the trial court denied. Subsequently, the parties executed a Separation and Property Settlement Agreement. Wife filed a motion to enforce the court's order on attorneys' fees. Husband filed for a supersedeas bond, which the court ordered set at $10,000. The final decree of divorce was entered on August 16, 2002.

I. Analysis

A. Memorandum of Understanding

When reviewing a chancellor's decision on appeal, we view the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences.

- 4 -

Wright v. Wright, 38 Va. App. 394, 398, 564 S.E.2d 702, 704 (2002); Donnell v. Donnell, 20 Va. App. 37, 39, 455 S.E.2d 256, 257 (1995). This case presents a mixed question of fact and law. We defer to the factual findings of the court with regard to the acts of the parties, but consider the language of the contract as a matter of law, which we review *de novo*. Langman v. Alumni Ass'n of the Univ. of Va., 247 Va. 491, 498, 442 S.E.2d 669, 674 (1994); Shenk v. Shenk, 39 Va. App. 161, 571 S.E.2d 896 (2002). See also Smith v. Smith, 3 Va. App. 510, 513, 351 S.E.2d 593, 595 (1986) ("We are not bound by the trial court's conclusions as to the construction of the disputed provisions.").

Under Code § 8.01-680, a factual determination cannot be reversed on appeal unless plainly wrong or without evidence to support it. See Schweider v. Schweider, 243 Va. 245, 250, 415 S.E.2d 135, 138 (1992); Torian v. Torian, 38 Va. App. 167, 181, 562 S.E.2d 355, 362 (2002). In this case, the terms of the memorandum were negotiated and written on the morning of the scheduled *pendente lite* hearing. Both parties signed the memorandum of understanding and represented to the court that it was done in order to settle all the issues that were to be heard. The parties also represented that they intended its terms to be integrated into a formal separation and property settlement agreement. The parties then asked the court to incorporate the memorandum into an agreed order that required the parties to comply with its terms.[2] The trial

---

[2] Husband urges this Court to find the memorandum unenforceable under the Uniform Premarital Agreement Act, which applies to all property settlement agreements between spouses. Code § 20-151 provides:

> A. A premarital agreement is not enforceable if the person against whom enforcement is sought proves that:
> 1. That person did not execute the agreement voluntarily; or
> 2. The agreement was unconscionable when it was executed and, before execution of the agreement, that person (i) was not provided a fair and reasonable disclosure of the property or financial obligations of the other party; and (ii) did not voluntarily and expressly waive, in writing, any right to disclosure of the property

- 5 -

court found that the subsequent acts of the parties and their counsel after signing the

memorandum and agreed order indicated that neither party was awaiting further disclosures.

Draft separation agreements by both parties included language incorporating the memorandum

and language that the agreements were based upon information the parties had about each other,

which indicates that the disclosures already made were acceptable to the parties for the purpose

of moving forward and drafting the separation and property agreement.  The chancellor found

that husband did not make mention of the disclosure issue until one year after the original

agreement had been made, and after he had hired new counsel.  Therefore, the acts of the parties

support the trial court's conclusion that the parties did not intend to make further disclosures

before drafting the final agreement.

---

or financial obligations of the other party beyond the disclosure
provided.
B.  Any issue of unconscionability of a premarital agreement shall
be decided by the court as a matter of law.  Recitations in the
agreement shall create a prima facie presumption that they are
factually correct.

Husband contends that he was ordered to sign the Separation and Property Settlement Agreement
by the court, and therefore did not "execute the agreement voluntarily," and that this Court
cannot decide whether the agreement is unconscionable because there must first be "a full and
adequate disclosure by the parties with which to thereby judge the terms of the agreement."
First, we find nothing in the record that suggests husband did not agree to the memorandum
voluntarily as required by Code § 20-151(A)(1).  In fact, husband *asked* the trial court to
incorporate the memorandum into an agreed order directing the parties to comply with its terms.
The trial court, by ordering husband to sign the separation and property settlement agreement
was enforcing the agreed order.  To apply Code § 20-151(A)(2), a court must find that the
agreement was unconscionable when the parties signed it.  Husband never asked the trial court to
make such a finding, and we decline to do so.  Husband had competent legal counsel and
voluntarily signed the memorandum.  Husband also suggests that the trial court's order forcing
him to sign the agreement now creates a false *prima facie* presumption that recitations in the
agreement are correct pursuant to Code § 20-151(B).  Husband thereby contends that his right to
procedural and substantive due process was violated.  We see no such violation.  Husband
voluntarily signed the memorandum and agreed order and cannot now complain of the
unintended consequences of that agreement.

We turn now to a review of the language of the memorandum. "Property settlement agreements are contracts; therefore, we . . . apply the same rules of interpretation applicable to contracts generally." Tiffany v. Tiffany, 1 Va. App. 11, 15, 332 S.E.2d 796, 799 (1985). Where an agreement is plain and unambiguous in its terms, the court is duty bound to give it full force and effect. See generally Bridgestone/Firestone, Inc. v. Prince William Sq. Assocs., 250 Va. 402, 407, 463 S.E.2d 661, 664 (1995) (citing Foods First, Inc. v. Gables Assoc., 244 Va. 180, 182, 418 S.E.2d 888, 889 (1992)); Burns v. Eby & Walker, Inc., 226 Va. 218, 221, 308 S.E.2d 114, 116 (1983). Where parties contract lawfully and their contract is free from ambiguity or doubt, their agreement furnishes the law which governs them and "equity will refuse to give it another by interpretation." Elam v. Ford, 145 Va. 536, 545, 134 S.E. 670, 672 (1926).

Virginia adheres to the "plain meaning" rule – courts examine the plain language of an agreement, going beyond the written contract only when its meaning is ambiguous. See Pysell v. Keck, 263 Va. 457, 460, 559 S.E.2d 677, 678-79 (2002); Douglas v. Hammett, 28 Va. App. 517, 524, 507 S.E.2d 98, 101 (1998); Tiffany, 1 Va. App. at 15-16, 332 S.E.2d at 799. Courts shall not include or ignore words to change the plain meaning of the agreement. Southerland v. Estate of Southerland, 249 Va. 584, 590, 457 S.E.2d 375, 378 (1995). Husband urges that language in the memorandum, such as, "desire," "intend," and "including, but not limited to," indicates that the agreement is conditional, binding the parties only to a process. However, the plain meaning of such phrases is that the parties are evincing what they want to or will do; the language does not make the memorandum a conditional agreement.

In Boisseau v. Fuller, the Virginia Supreme Court stated:

> If the parties are fully agreed, there is a binding contract, notwithstanding the fact that a formal contract is to be prepared and signed; but the parties must be fully agreed and must intend the agreement to be binding. If though fully agreed on the terms of their contract, they do not intend to be bound until a formal contract is prepared, there is no contract, and the circumstance that

the parties do intend a formal contract to be drawn up is strong evidence to show that they did not intend the previous negotiations to amount to an agreement.

96 Va. 45, 46-47, 30 S.E. 457, 458 (1898) (quoting Clark on Contracts at 38). The memorandum states that "[t]he parties desire to resolve all issues of property, support and custody." There was nothing in the memorandum to indicate that the parties were not fully agreed. Moreover, the parties did not just sign the memorandum, they asked the court to incorporate it into an agreed order, requiring them to comply with its terms, including drafting the formal agreement. Unless a written agreement is "subject to" the execution of a subsequent formal agreement, a court will enforce it as a binding contract. Golding v. Floyd, 261 Va. 190, 194, 539 S.E.2d 735, 737 (2001). In this case, the memorandum was a binding contract to which the parties fully agreed, and asked the court to order compliance by the parties. The memorandum was not subject to or dependent upon the execution of the separation and property settlement agreement.

The only issue remaining in the case was to formalize the memorandum into a property settlement agreement, including "standard provisions including but not limited to: indemnification, full disclosure and reliance on disclosures, releases and reimbursements for counsel fees for enforcement." While the memorandum allowed inclusion of standard provisions other than those listed upon agreement of the parties, it did not stipulate that further negotiation over terms was required.

Husband further complains that he was due additional disclosures before he could enter into the separation and property agreement. The plain language of the memorandum indicated that the separation and property agreement would contain a standard provision on disclosures.[3] The language requiring a standard provision on disclosures at paragraph 9 of the memorandum

---

[3] "The Separation and Property Settlement Agreement shall contain standard provisions including but not limited to: indemnification, full disclosure and reliance on disclosures, releases and reimbursement for counsel fees for enforcement." Memorandum of Understanding, p. 10.

does not indicate nor imply that the parties were to provide further disclosures in the future.  In fact, a promise to make future disclosures, for which the memorandum did provide, is distinct and separate from the standard provision.  Specific provisions for future disclosures are included in the memorandum under the paragraphs for child support,[4] retirement accounts,[5] Vanguard account,[6] patent,[7] and taxes.[8]

Therefore, we hold that the plain language of the memorandum requiring a standard disclosure provision does not contemplate further disclosures by either party.  It does not state that preparation of the separation and property settlement agreement is conditional upon further disclosures.  It merely states that the separation and property settlement agreement shall contain standard disclosure provisions.  Furthermore, as found by the trial court, the actions of the parties are consistent with this conclusion.[9]  And, the specific provision for future disclosures on named

---

[4] "The parties shall exchange full financial disclosure information in the event either party seeks a modification of child support in the future."  Memorandum of Understanding, p. 2, paragraph 2.

[5] "Husband shall immediately provide Wife's counsel with all statements regarding these retirement accounts."  Memorandum of Understanding, p. 6, paragraph 4A.

[6] "Husband shall immediately provide Wife's counsel with the most recent statement for the Vanguard Account."  Memorandum of Understanding, p. 7, paragraph 4b.

[7] "Husband shall provide Wife with any and all information of any nature whatsoever that he receives relating to the patent for any funds that he receives therefrom."  Memorandum of Understanding, p. 7, paragraph 4c.

[8] "The parties shall exchange federal and state income tax returns each year until the youngest child is emancipated."  Memorandum of Understanding, p. 10, paragraph 9.

[9] Husband relies on Richardson v. Richardson, 10 Va. App. 391, 392 S.E.2d 688 (1990), and the unpublished case of Echols v. Echols, No. 0531-85 (Va. Ct. App. July 3, 1987).  Richardson concerned an oral agreement that the parties intended to reduce to writing.  The case is not dispositive as the case at bar involves a written agreement that was incorporated into an agreed order.  Echols is an unpublished case that we consider non-precedential.

- 9 -

issues in other paragraphs of the memorandum (paragraphs 2, 4A, 4b, 4c, and 9) support this interpretation.

### B. Attorneys' Fees and Supersedeas Bond

Whether to award attorney's fees "is a matter submitted to the sound discretion of the trial court and is reviewable on appeal only for an abuse of discretion." Northcutt v. Northcutt, 39 Va. App. 192, 199-200, 571 S.E.2d 912, 916 (2002) (quoting Graves v. Graves, 4 Va. App. 326, 333, 357 S.E.2d 554, 558 (1987)) (internal quotation marks omitted). Husband complains that because the trial court found that the memorandum was intended to resolve all issues in the case, and because the memorandum did not provide for attorneys' fees, an award of attorneys' fees to the wife was an abuse of discretion. While the memorandum contemplated a provision for attorneys' fees in the subsequent separation and property settlement, it did not prohibit the court from awarding attorneys' fees on a statutory basis.

The trial court predicated an award to wife upon Code §§ 20-99, and 20-103, both of which provide for an award of attorneys' fees in a divorce case.[10] See Kaufman v. Kaufman, 7

---

[10] Husband argues that Code § 20-109(C) prohibits the court from awarding attorneys' fees except as provided in the memorandum. Code § 20-109(C) states: "[I]f a stipulation or contract signed by the party to whom such relief might otherwise be awarded is filed before entry of a final decree, no decree or order directing the payment of support and maintenance for the spouse, suit money, or counsel fee or establishing or imposing any other condition or consideration, monetary or nonmonetary, shall be entered except in accordance with that stipulation or contract. Husband cites Sanford v. Sanford, 19 Va. App. 241, 249, 450 S.E.2d 185, 190 (1994), to support his notion. Sanford clearly says that where a contract remains silent on an issue, Code § 20-109 does not prevent a court from ordering a course of action.

> Code § 20-109 only restricts the action a trial court may take where the parties have agreed upon a matter. Code § 20-109 does not prohibit a trial court from ordering a course of action upon a matter that the parties do not address in their property settlement agreement, provided the court is not otherwise precluded from doing so and the course of action is appropriate.

Sanford, 19 Va. App. at 250, 450 S.E.2d at 191. The parties in this case clearly did not make any agreements on the issue of attorneys' fees, and the memorandum was silent on this issue.

Va. App. 488, 375 S.E.2d 374 (1988). Code § 20-99(5) states: "Costs may be awarded to either party as equity and justice may require." Code § 20-103(A)(ii) allows the court to make any order in a pending suit that is proper, "to enable [a] spouse to carry on the suit." We have said that "'the key to a proper award of counsel fees . . . [is] reasonableness under all of the circumstances revealed by the record.' Where the trial judge finds that a fee award is justified, evidence of time expended and services rendered is a proper basis upon which to fix an award." Westbrook v. Westbrook, 5 Va. App. 446, 458, 364 S.E.2d 523, 530 (1988) (citation omitted).

Husband complains that the trial court had no evidence with regard to the financial circumstances and needs of the parties before it awarded attorneys' fees to wife. However, the evidence shows that the chancellor held two hearings on the matter, on February 22, 2002, and February 28, 2002. The court also allowed the parties to submit supplemental briefs on the issue. In his letter opinion, the chancellor wrote, "Taking into consideration the income and financial circumstances of the parties, this Court finds that equity and justice require [husband] to pay attorneys' fees for [wife's] defense of the Motion to Enforce Compliance."

We find no abuse of discretion. Therefore, we conclude that the trial court did not err in awarding the wife her attorneys' fees incurred for defense of the motion.

Husband further complains that the trial court abused its discretion in setting a supersedeas bond higher than the amount of the attorneys' fees award. Code § 8.01-676.1(a) states: "If the appellant wishes suspension of execution, the security . . . shall be in such sum as the trial court may require." The trial court set the bond at $10,000, even though the attorneys' fees award was $8,193.54. Husband provides no legal basis on which to complain of the bond amount. The statute authorizes the trial court to set an amount, as it requires. Therefore, we find no abuse of discretion by the chancellor.

Wife requests this Court to award attorneys' fees and costs incurred on appeal.  See O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996).  The rationale for the appellate court being the proper forum to determine the propriety of an award of attorney's fees for efforts expended on appeal is clear.  The appellate court has the opportunity to view the record in its entirety and determine whether the appeal is frivolous or whether other reasons exist for requiring additional payment.

Upon a review of this appeal, we find that the husband's case presented numerous questions that were not supported by law or evidence.  See Gottlieb v. Gottlieb, 19 Va. App. 77, 95, 448 S.E.2d 666, 677 (1994).  Therefore, we award attorneys' fees to wife and remand this case to the trial court for determination of attorneys' fees and costs incurred in responding to this appeal, and for any costs incurred at the hearing on remand.

### III.  Conclusion

Accordingly, we affirm the trial court's decision regarding the memorandum of understanding, award of attorneys' fees to wife, and setting of the supersedeas bond.  We remand the case for a determination of wife's attorneys' fees and costs incident to this appeal.

Affirmed and remanded.