686 F.2d 799
 Bankr. L. Rep. P 69,004
In re THC FINANCIAL CORP., A Hawaii Corporation, Debtor.
EMPLOYEES' RETIREMENT SYSTEM OF the STATE OF HAWAII, Appellant,
v.
J. Carl OSBORNE, Trustee in reorganization for the THC
Financial Corp., A Hawaii Corporation, Appellee.
 No. 81-4358.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 22, 1982.
Decided Sept. 8, 1982.
 
 H. William Burgess, Honolulu, Hawaii, for appellant.
 Tamotsu Tanaka, Honolulu, Hawaii, for appellee.
 Appeal from the United States Bankruptcy Court for the District of Hawaii.
 Before SCHROEDER, NELSON, and BOOCHEVER, Circuit Judges.
 NELSON, Circuit Judge:
 
 
 1
 Appellant, Employee Retirement System (ERS), seeks review of a district court decision enjoining it from proceeding in an action against the trustee in bankruptcy of THC Financial Corp. (THC), and declining to hear its claim in the bankruptcy action. The district court found that ERS's action against THC's trustee could not be filed without leave of the court, and enjoined the action; it also denied ERS leave to file the claim in the bankruptcy proceeding because it was untimely. We affirm in part and vacate and remand in part.
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 2
 ERS and THC each held mortgages on a hotel in Hawaii (the Pacific Prince Hotel). ERS held a first mortgage; THC held third, fourth, and fifth mortgages. After the mortgages had been in default for some time, ERS, in the fall of 1975, instituted foreclosure proceedings in Hawaii state courts. Those proceedings were still in progress in July, 1976, when several persons expressed interest in leasing space in the hotel. The prospective tenants sought to protect any interest they might acquire through an agreement (the attornment agreement) with the mortgagees. The agreement required that any foreclosure sale be subject to the tenants' interests.
 
 
 3
 Each of the mortgagees ultimately consented to the attornment agreement. ERS, however, as holder of the first mortgage, sought to shift any loss that might result from the attornment agreement to the subsidiary mortgage holder. Accordingly, ERS consented only upon the condition that THC agree to indemnify ERS for any losses ERS might incur as a result of the attornment agreement. This agreement (the indemnification agreement) required THC to indemnify ERS "from and against any costs incurred by it in connection with joining (lessees) as additional parties in the foreclosure proceedings ... and against any loss to it resulting from (ERS's) agreement to ... attornments."A foreclosure sale was finally held in August, 1979, and the Pacific Prince Hotel was sold to Petrous Hotels, Inc. (Petrous). The tenants attempted to intervene in the foreclosure proceeding, but the Hawaii court denied intervention,[1] and the hotel was sold to Petrous free of at least one tenant's interest (that tenant was known as Foto Island, later known as, and hereinafter referred to as, Oahu Foto). Soon after purchase of the hotel, Petrous instituted ejectment proceedings against Oahu Foto, on the ground that the foreclosure sale was not subject to Oahu Foto's leasehold interest. In May, 1980, Oahu Foto joined ERS as a third party defendant in the ejectment action, claiming damages for breach of the attornment agreement.
 
 
 4
 By this time, THC had entered bankruptcy proceedings. J. Carl Osborne, THC's trustee in bankruptcy (the trustee) had sold THC's interest in the mortgages to Seymour Svirsky (Svirsky). After ERS was joined as a third party defendant in the ejectment proceedings, it joined the trustee and Svirsky as additional third party defendants. ERS's additional third party complaint stated two causes of action. The first claimed that any award in favor of Oahu Foto would unjustly enrich the bankruptcy estate of THC. The second cause of action claimed that ERS was entitled to indemnification under the indemnification agreement.
 
 
 5
 THC responded to ERS's additional third party complaint by filing a motion in the ejectment proceeding seeking to have the complaint dismissed, and by requesting the bankruptcy court to restrain ERS from pursuing the action. ERS responded in the bankruptcy court by moving for dismissal of the trustee's motions, and by filing a counterclaim. Through its counterclaim, ERS sought to file its indemnification claim as a claim for an administrative expense in the bankruptcy proceeding. ERS also sought to preserve the ability to proceed in state court. All actions against the debtor and trustee in state courts are normally stayed pursuant to Bankruptcy Rule 10-601, and, in addition, the bankruptcy court had in this case specifically enjoined all proceedings against the debtor and the trustee when it approved the bankruptcy petition. ERS argued that it should be allowed to proceed nevertheless. It claimed that 28 U.S.C. § 959(a)-which permits suits against a trustee "with respect to any ... acts or transactions in carrying on (the debtor's) business"-permitted its suit despite the automatic stay of Rule 10-601 and the bankruptcy court's injunction. The counterclaim included an alternative claim for relief from any stay that did apply to ERS's action.
 
 
 6
 The trustee's motion in the state action to dismiss the additional third party complaint is being held in abeyance pending completion of this appeal. In April, 1981, the bankruptcy court held that ERS could not rely on 28 U.S.C. § 959(a) to escape the automatic stay and injunction preventing actions against the trustee, and enjoined ERS from pursuing its claims. The court also held that the indemnification claim had been allowable as a contingent claim against THC when the bankruptcy proceedings commenced, and was therefore barred as untimely filed. Finally, the court found that the unjust enrichment claim "stem(med) directly from a purported breach of the indemnification agreement" and was therefore barred by ERS's failure to file a timely claim under the indemnification agreement.
 
 DISCUSSION
 
 7
 The bankruptcy court's rulings present three issues on appeal. The first is whether the bankruptcy court erred in characterizing ERS's indemnification claim as an allowable and untimely filed contingent claim against the bankrupt. The second issue is whether the bankruptcy court erred in finding that the unjust enrichment claim stemmed from the indemnification claim. The final issue is whether the bankruptcy court properly enjoined ERS from pursuing its claims.1. Did the Bankruptcy Court Err in Its Characterization of the Indemnification Claim?
 
 
 8
 The bankruptcy court's characterization of ERS's indemnification claim as an allowable contingent claim effectively prevented ERS from receiving any distribution from THC's bankruptcy estate. Distribution of a bankrupt's estate upon liquidation or under a plan of reorganization is made to several classes of claimants. Distribution is first made in payment of any allowed costs or expenses incurred in administration of the bankrupt's estate. After allowable administrative expenses are paid, distribution may be made to those creditors of the bankrupt who have filed allowable claims. Allowable claims against the debtor must be filed within the time ordered by the bankruptcy court.[2] Claims for administrative expenses, of course, need not be filed until they arise in the course of administration. Because the bankruptcy court characterized ERS's indemnification claim as an allowable contingent claim against the debtor, the claim could not be presented as a claim against the trustee for an administrative expense, and was untimely filed as a claim against the debtor.
 
 
 9
 The bankruptcy court's conclusion that ERS's indemnification claim was an allowable contingent claim is based on provisions of the Bankruptcy Act that define allowable claims against a bankrupt. Section 106 of the Bankruptcy Act, 11 U.S.C. § 506 (1976) (superseded for proceedings commenced after October, 1979), provides that allowable claims include "all claims of whatever character ... whether ... liquidated or unliquidated, fixed or contingent." The bankruptcy court determined that even though the indemnification claim did not mature until after the bankruptcy petition was filed in late 1976,[3] the claim had existed as a contingent claim since the attornment and indemnification agreements were entered into early in 1976.
 
 
 10
 ERS disputes the bankruptcy court's characterization of its indemnification claim as an allowable contingent claim. According to ERS, it did not have a contingent claim in 1976 because no claim arose until after the attornment agreement was breached in 1979 by sale of the Pacific Prince Hotel free of Oahu Foto's leasehold interest and Oahu Foto sought damages from ERS in 1980. ERS argues that the only claim it could be said to have had in 1976 was a claim under the indemnification agreement as an executory contract which, because the trustee had not rejected the contract, remained as a claim against the trustee.
 
 
 11
 We have little guidance in determining whether ERS's indemnification claim existed as a contingent claim in 1976 or did not arise until some later date. But the cases which have been decided, together with the structure and purpose of the Bankruptcy Act, suggest that any doubts should be resolved in favor of finding that a contingent claim existed.
 
 
 12
 The Supreme Court first allowed a contingent claim against a bankrupt even before the Act specified that such claims were allowable. In Maynard v. Elliott, 283 U.S. 273, 51 S.Ct. 390, 75 L.Ed. 1028 (1931), the Court concluded that a contingent claim should be allowed, noting that questions involving the allowability of claims
 
 
 13
 should be resolved in light of the purpose of the Act "to convert the assets of the bankrupt into cash for distribution among creditors and then to relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes."
 
 
 14
 283 U.S. at 277, 51 S.Ct. at 392, 75 L.Ed. at 1031 (quoting Williams v. United States Fidelity and Guaranty Co., 236 U.S. 549, 35 S.Ct. 289, 59 L.Ed. 713 (1915)). See also Brown v. O'Keefe, 300 U.S. 598, 57 S.Ct. 543, 81 L.Ed. 827 (1937). The Court recognized that some claims might be so contingent that they could not properly be submitted for proof:
 
 
 15
 The contingency of a bankrupt's obligation may be such as to render any claims upon it incapable of proof. It may be one beyond the control of the creditor, and dependent on an event so fortuitous as to make it uncertain whether liability will ever attach .... Or, the contingency may be such as to make any valuation of the claim impossible, even though liability has attached.
 
 
 16
 283 U.S. at 278, 51 S.Ct. at 392, 75 L.Ed. at 1031-32. Nevertheless, every court that has considered the allowability of a contingent claim has found the claim allowable. See, e.g., Brown v. O'Keefe, 300 U.S. 598, 57 S.Ct. 543, 81 L.Ed. 827 (1937) (claim based on assessment on debtor likely to occur upon completion of liquidation of claimant); Maynard v. Elliott, 283 U.S. 273, 51 S.Ct. 390, 75 L.Ed. 1028 (1931) (claim based on debtor's endorsement of notes that were not due until after bankruptcy was commenced); Toys "R" Us, Inc. v. Esgro, Inc. (In re Esgro, Inc.), 645 F.2d 794 (9th Cir. 1981) (claim based on agreement to pay attorney's fees in action that was pending appeal at time of bankruptcy); Marin Foods, Inc. v. Hempy (In re William Rakestraw Co.), 450 F.2d 6 (9th Cir. 1971) (claim based on debtor's promise to pay claimant's debts which had not yet been paid by claimant).
 
 
 17
 The amendment to the Bankruptcy Act that provided specifically for proof of contingent claims also specified the type of claims that were too contingent to be allowed. The Act provides that
 
 
 18
 an unliquidated or contingent claim shall not be allowed unless liquidated or the amount thereof estimated in the manner and within the time directed by the court; and such claim shall not be allowed if the court shall determine that it is not capable of liquidation or of reasonable estimation or that such liquidation or estimation would unduly delay the administration of the estate or any proceeding under this title.
 
 
 19
 Bankruptcy Act of 1938 § 57(d), 11 U.S.C. § 93(d) (1976) (superseded for proceedings commenced after October, 1979). This provision confers a broad power on the bankruptcy court to take steps necessary to liquidate or estimate claims, see generally 3 J.W. Moore & R.S. Oglebay, Collier on Bankruptcy P 57.15(3) (14th ed. 1977), and affords the court broad discretion in determining what constitutes "undue" delay or a "reasonable" estimation, see id., P 57.15(4), at 266. Accordingly, we will overturn the bankruptcy court's determination that a claim was an allowable contingent claim only if the determination constitutes an abuse of discretion.
 
 
 20
 In light of the policy of the Bankruptcy Act promoting disposition of as many claims against the debtor as possible, and the power of the court to liquidate or estimate claims, the bankruptcy court's characterization of ERS's claim as an allowable contingent claim was well within its discretion. ERS's failure to present the claim denied the bankruptcy court the opportunity to attempt to resolve the claims, and thus frustrated the policy of the Bankruptcy Act. At this late date it is probably impossible to determine conclusively whether, in 1976, the bankruptcy court could have exercised its powers in such a way as to liquidate or reasonably estimate ERS's indemnification claim without undue delay. But the obligations of THC and ERS under the attornment agreement, and the obligation of THC to pay ERS under the indemnification agreement, had been defined in 1976, and the bankruptcy court could conceivably have taken action to enforce those obligations at that time.[4] Because those obligations were conceivably subject to liquidation or estimation in 1976 and the bankruptcy court was denied the opportunity to attempt to resolve the claim, the court's determination that the claims were allowable should not be considered an abuse of discretion.
 
 
 21
 ERS argues that its claim under the indemnification agreement was a claim under an executory contract. ERS argues that its claim therefore continues to exist as a claim against the trustee because the trustee had not rejected the contract. We reject the premise of this argument: the indemnification agreement was not an executory contract. This court has held that contracts can be treated as executory in bankruptcy if " 'the obligations of both the bankrupt and the other party are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other.' " Fenix Cattle Co. v. Silver (In re Select-A-Seat Corp.), 625 F.2d 290, 292 (9th Cir. 1980) (quoting V. Countryman, Executory Contracts in Bankruptcy: Part I, 57 Minn.L.Rev. 439, 460 (1973)). See also Benevides v. Alexander (In re Alexander), 670 F.2d 885, 887 (9th Cir. 1982). Thus, courts have consistently held that contracts that only required payment by the debtor are not executory. See, e.g., Benevides v. Alexander (In re Alexander), 670 F.2d 885 (9th Cir. 1982) (mortgage agreement not executory); In re Grayson-Robinson Stores, 321 F.2d 500 (2d Cir. 1963) (guarantee agreement not executory). THC's agreement to indemnify ERS contains only one obligation: THC is obligated to pay ERS if ERS incurs any loss as a result of the attornment agreement. The consideration for the indemnification was, as stated in the indemnification agreement, "the Agreement of (ERS) to attornments requested by the shop lessees ...": this obligation has long since been fulfilled. We therefore conclude that the agreement was not executory.[5]
 
 
 22
 We conclude that the bankruptcy court did not err in finding ERS's indemnification claim an allowable contingent claim against the bankrupt. We therefore affirm the order barring the claim as untimely filed.
 
 
 23
 2. Did the Bankruptcy Court Err in its Characterization of the Unjust Enrichment Claim?
 
 
 24
 The bankruptcy court did not mention ERS's unjust enrichment claim in its first order barring ERS's indemnification claim and enjoining ERS from proceeding in state court. In support of a motion to amend the judgment ERS argued that it should be allowed to proceed on its unjust enrichment claim. The bankruptcy court denied ERS's motion for an amended judgment, holding that ERS's "claim for unjust enrichment stems directly from a purported breach of the indemnity agreement. By failing to make a timely claim under this agreement in this court, ERS lost any claim it might have against the estate."
 
 
 25
 We find that the unjust enrichment claim cannot be so easily disposed of. It may be that the unjust enrichment claim has no merit in light of the express agreement to compensate found in the indemnification agreement. But the fact that the unjust enrichment claim may not have merit because of an event (the agreement to indemnify) that occurred before THC entered bankruptcy does not alter the fact that the claim arose out of actions taken by the trustee after THC entered bankruptcy. In order to determine whether the unjust enrichment claim should be barred, the bankruptcy court should only have considered when the claim arose: the merit of the claim should only be considered when, and if, ERS is granted leave to pursue the claim. The district court therefore erred in concluding that the unjust enrichment claim was barred.3. Did the Bankruptcy Court Err in Enjoining ERS From Pursuing its Claims?
 
 
 26
 In light of our conclusion that the unjust enrichment claim cannot be barred on the ground that it stems from the indemnification claim, the justification for enjoining ERS from pursuing that claim is unclear. In issuing its injunction, the bankruptcy court concluded that ERS could not file its action without leave of the court under 28 U.S.C. § 959(a) because the trustee was not, as the statute requires, "carrying on" THC's business. The bankruptcy court did not, however, explain why it denied ERS's motion for leave to proceed with its action in spite of any applicable stay. The bankruptcy court has ample discretion to deny leave, but we have no indication of why leave was denied, and, absent an obvious reason, we cannot determine whether the bankruptcy court abused its discretion. See United States v. CBS, 666 F.2d 364, 371-72 (9th Cir. 1982) (remanding in light of district court's failure to articulate reasons for denying award of discovery costs and inability to extract reasons for the award from record on appeal).[6]
 
 
 27
 We have no difficulty determining why the bankruptcy court prevented ERS from pursuing its indemnification claim. The bankruptcy court correctly concluded that the indemnification claim was properly characterized as a claim against the debtor rather than against the trustee. As there was no valid claim against the trustee, and any claim against the debtor was barred as untimely filed, ERS had no claim it properly could pursue. The bankruptcy court's injunction against that action was clearly well founded.
 
 
 28
 The reason for the injunction against the unjust enrichment claim is not so clear. The bankruptcy court erred in determining that the unjust enrichment claim was dependent on the indemnification claim: therefore, there has been no proper determination that the unjust enrichment claim was an allowable contingent claim against the debtor. Absent this ground for enjoining the action, we see no clear reason for the injunction. We therefore remand to give the bankruptcy court an opportunity to exercise its discretion as to whether ERS should be allowed to pursue the unjust enrichment claim.
 
 CONCLUSION
 
 29
 The bankruptcy court's conclusion that ERS's indemnification claim was an allowable contingent claim was within its discretion. The court, therefore, properly concluded that ERS had no valid claim against the trustee for indemnification. That portion of the bankruptcy court's judgment is affirmed. The bankruptcy court erred, however, in failing to distinguish the unjust enrichment claim from the indemnification claim, and in failing to exercise its discretion as to whether ERS should have been granted leave to pursue that claim. The portion of the judgment enjoining ERS from pursuing its unjust enrichment claim is therefore vacated and remanded.
 
 
 30
 AFFIRMED IN PART, AND VACATED AND REMANDED IN PART.
 
 
 
 [1]
 The tenants appealed the denial of intervention, but the decision was affirmed. Employee Retirement System v. Aina Alii, Inc., Haw., 643 P.2d 65 (1982)
 
 
 [2]
 In June, 1977, the bankruptcy court filed an order requiring that all proofs of claim be filed by August 1, 1977. The order included a provision that any proofs of claim filed thereafter would be barred
 
 
 [3]
 The original petition for an arrangement under Chapter XI was filed December 8, 1976. On March 18, 1977, the bankruptcy court approved a motion of the Securities Exchange Commission to convert the claim to Chapter X, and approved the petition as converted
 
 
 [4]
 For example, the court could have ordered either ERS or THC to take action in the foreclosure proceedings necessary to protect Oahu Foto's interests. This would appear to have insured that ERS would suffer no loss under the attornment agreement, and that THC would therefore incur no liability under the indemnification agreement other than the costs incurred by ERS in amending its foreclosure complaint
 
 
 [5]
 Two courts sitting in bankruptcy have held that indemnification agreements are not executory contracts. In re THC Financial Corp., 446 F.Supp. 1329 (D.Hawaii 1977); Van Dyke Research Corp. v. SCM Corp. (In re Van Dyke Research Corp.), 13 B.R. 487 (Bkrtcy.D.N.J.1981)
 
 
 [6]
 We need not determine whether the bankruptcy court erred in holding that ERS was not given the right to proceed with its action under 28 U.S.C. § 959(a). That section authorizes the bankruptcy court to enjoin actions that are allowed by its terms if "necessary to the ends of justice". This circuit has held that a bankruptcy court has the same discretion to enjoin an action permitted by section 959(a) as it has to deny leave to pursue an action that is not permitted by section 959(a). Diner's Club v. Bumb, 421 F.2d 396, 401-02 (9th Cir. 1970). Thus, whether or not section 959(a) is applicable to ERS's action, the only question is whether the bankruptcy court abused its discretion in preventing the action from going forward