734 F.2d 1020
 116 L.R.R.M. (BNA) 2567, 101 Lab.Cas. P 11,053,
12 Bankr.Ct.Dec. 25, Bankr. L. Rep. P 69,888
 GLORIA MANUFACTURING CORPORATION and Edward G. Grant,
Trustee, Appellants,
v.
INTERNATIONAL LADIES' GARMENT WORKERS' UNION; Upper South
Department, International Ladies' Garment Workers'
Union and Local 563, International
Ladies' Garment Workers'
Union, Appellees.
 No. 82-1995.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 8, 1983.
Decided May 25, 1984.
 
 Richard W. Hudgins, Newport News, Va. (Hudgins & Neale, Newport News, Va., on brief), for appellants.
 Marc E. Richards, New York City (Booth, Lipton & Lipton, Lester Kushner, New York City, Asst. Gen. Counsel, Jay J. Levit, Levit & Mann, Richmond, Va., on brief), for appellees.
 Before PHILLIPS and SPROUSE, Circuit Judges and HOFFMAN,* Senior District Judge.
 PER CURIAM:
 
 
 1
 Gloria Manufacturing Corporation (Gloria) instituted adversary proceedings in bankruptcy court seeking judicial ratification of a proposed rejection of its collective bargaining agreement with the International Ladies' Garment Workers' Union (the Union). The bankruptcy court granted the Union's motion for summary judgment, holding the matter to be moot because the contract had expired two weeks before the hearing.
 
 
 2
 Gloria appealed to the district court, which affirmed the bankruptcy court in a memorandum order. Gloria and the two trustees then appealed to this court, asking that we reverse the district court and remand the case to the bankruptcy court for a ruling on the merits of Gloria's request for rejection of the contract.
 
 
 3
 The only issue in this case is whether, at the time of the bankruptcy court's hearing, the collective bargaining agreement was an executory contract capable of rejection under 11 U.S.C. Sec. 365(a)[1]. We agree with both the bankruptcy court and the district court that the expiration of the contract rendered Gloria's complaint moot. We therefore affirm the order of the district court.
 
 
 4
 * Appellant Gloria manufactured womens' and childrens' clothing in its factory in Newport News, Virginia. It had entered into a collective bargaining agreement with the Union on May 1, 1979, with the contract to run through April 30, 1982.
 
 
 5
 On December 4, 1981, Gloria filed for voluntary reorganization under Chapter 11 of the Bankruptcy Code, thereby becoming a debtor-in-possession. Upon the motion of the Union, the bankruptcy court appointed a trustee on May 28, 1982.
 
 
 6
 On February 1, 1982, Gloria initiated an adversary proceeding pursuant to 11 U.S.C. Sec. 365 to reject its contract with the Union. Gloria amended its complaint on March 19. At no time did Gloria seek expedited review of its complaint. The Union responded by moving for summary judgment. The Union also moved the bankruptcy court to appoint a trustee.
 
 
 7
 The bankruptcy court heard arguments on the Union's motions on May 14, 1982. On May 28, the court entered an order dismissing the complaint as moot. Gloria and the Chapter 11 trustee appealed to the district court. The district court affirmed, expressly holding that the expiration of the contract had mooted the possibility of rejecting it.
 
 
 8
 Effective February 17, 1983, the bankruptcy court converted the Chapter 11 reorganization proceeding into a Chapter 7 liquidation proceeding and appointed a new trustee. The court subsequently authorized the sale of all Gloria's assets to Michael's Closet of Virginia, Inc. (Michael's Closet). Title passed to Michael's Closet on June 14, 1983. The Union has made a number of unfair labor practice complaints and charges to the N.L.R.B. against Gloria, Michael's Closet and both Trustees.[2] The Union filed these complaints both before and after the expiration of the contract.
 
 II
 
 9
 The Bankruptcy Code provides that, with some exceptions and subject to court approval, a trustee "may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. Sec. 365(a). The Code nowhere defines "executory." Examination of the Code's legislative history provides little help. It reveals only that Congress, aware of the imprecision of the term, intended executory contracts generally to include those "on which performance remains due to some extent on both sides." H.R.Rep. No. 595, 95th Cong., 1st Sess. 220 (1977), reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 5844.
 
 
 10
 Congress thus ratified the pre-Code practice, also uniformly followed by courts construing Sec. 365(a)[3], of relying on Professor Vern Countryman's definition of executory contracts. See, Countryman, Executory Contracts in Bankruptcy: Part I, 57 Minn.L.Rev. 439, 450-62 (1973). Countryman defines an executory contract as one:
 
 
 11
 under which the obligations of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete the performance would constitute a material breach excusing the performance of the other.
 
 
 12
 Id. at 460.
 
 
 13
 This definition is narrower than the classic formulation by Williston that "[a]ll contracts to a greater or less extent are executory. When they cease to be so, they cease to be contracts." 1 S. Williston, Contracts Sec. 14 (3d Ed.1957), quoted in id. at 450. Countryman notes that such a definition is useless in the bankruptcy context and argues that
 
 
 14
 The concept of the "executory contract" in bankruptcy should be defined in the light of the purpose for which the trustee is given the option to assume or reject. [This option should] be exercised when it will benefit the estate. A fortiori, it should not extend to situations where the only effect of its exercise would be to prejudice other creditors of the estate.
 
 
 15
 Id. at 450-51.
 
 
 16
 Countryman divided potentially executory contracts into three categories: (1) those in which the non-bankrupt has performed fully, (2) those in which the bankrupt has performed fully and (3) those in which neither party has performed fully. Id. at 461. Applying Countryman's analysis to the case at hand, we must decide whether the Union had fully[4] performed its contractual obligations, either at the time that Gloria filed suit to reject the contract, or after the contract had expired.
 
 
 17
 If the critical date for determining the executory nature of the contract is the date on which the bankruptcy court granted the Union's motion for summary judgment, the bankruptcy court was correct. Once a contract has expired on its own terms, there is nothing left for the trustee to reject or assume. 2 Collier on Bankruptcy p 365.02 (15th Ed.1983).
 
 
 18
 Appellants differ with this conclusion and ask this court to apply the Bankruptcy Code's relation-back doctrine and rule that the contract was still executory. Appellants' reply brief at 6. Appellants argue that, because 11 U.S.C. Sec. 365(g)(1) relates the rejection of a contract back to the day preceding the filing of the petition, the bankruptcy court still had the power to reject the contract even though it had already expired.
 
 
 19
 This interpretation flies in the face of the clear language of Sec. 365(g)(1) which speaks of the relation back of executory contracts. A contract may be rejected only if it was executory. Relation-back therefore applies only if rejection of a contract is effective. Because the power of the trustee or debtor-in-possession to reject a contract depends on court approval, Gloria's attempted rejection of its contract with the Union was never effective.
 
 
 20
 Because the contract expired before Gloria was able to obtain court approval for its attempt at rejection, the contract was no longer executory. Both the bankruptcy judge and the district judge were therefore correct in holding that the question had been mooted by the expiration of the contract.
 
 
 21
 AFFIRMED.
 
 
 
 *
 Honorable Walter E. Hoffman, Senior United States District Judge for the Eastern District of Virginia, sitting by designation
 
 
 [1]
 The Supreme Court recently held that under Sec. 365(a) of the Bankruptcy Code, debtors in possession may accept or reject executory collective bargaining agreements according to the same criteria applicable to all executory contracts. N.L.R.B. v. Bildisco & Bildisco, --- U.S. ----, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984). Bildisco is not applicable to this case because the collective bargaining agreement between Gloria and the Union had expired and was therefore no longer executory. As a result, the bankruptcy judge had no need to decide whether Gloria was entitled to reject its contract with the Union
 
 
 [2]
 The Union has made a number of serious charges, particularly against Gloria. These include repeated failure to pay wages when due; failure to make required welfare and retirement contributions; withholding employees' health insurance premiums from their wages, but not forwarding the premiums to the insurance company for three months, with a resulting loss of coverage for the workers; garnisheeing an employee's wages without forwarding the money to the creditor. Gloria's president admitted the substance of these charges in his testimony before the bankruptcy court
 
 
 [3]
 See, e.g., In re Cochise College Park, Inc., 703 F.2d 1339 (9th Cir.1983); In re Brada Miller Freight System, Inc., 702 F.2d 890 (11th Cir.1983); In re THC Financial Corp., 686 F.2d 799 (9th Cir.1982); In re Select-A-Seat Corp., 625 F.2d 290 (9th Cir.1980)
 
 
 [4]
 Although Countryman refers to "fully performed" contracts, it is clear that substantial performance by the non-bankrupt is sufficient to protect him from rejection of the contract. See id. at 457