**In re Robin C. WHITTAKER and Laura A. Cohen, Debtors.**

**Bankruptcy No. 93–00212.**

United States Bankruptcy Court, N.D. Florida, Gainesville Division.

Aug. 12, 1994.

Nancy Yenser, Gainesville, FL, for Barnett Bank.

I. Whittaker, pro se.

Lisa Cohen, Gainesville, FL, for debtors.

### *ORDER ON OBJECTION TO PROOF OF CLAIM*

LEWIS M. KILLIAN, Jr., Bankruptcy Judge.

THIS MATTER is before the Court on an objection filed by Barnett Bank of Alachua County, N.A. (the "Bank"), a creditor, to the claim of Iantha Whittaker, another creditor.

At a hearing on the Bank's motion, the Court granted leave to the parties to file memoranda of law regarding the validity of Mrs. Whittaker's claim. At issue is whether Mrs. Whittaker's claim is enforceable against the Debtors and entitles her to vote on the plan with the class of unsecured creditors of which the Bank is also a member. The Court, having reviewed the pleadings and having heard the arguments of counsel, makes the following findings of fact and conclusions of law.

### FACTS

The Debtors are a married couple operating separate businesses. Robin Whittaker, Debtor/Husband, is a licensed masseuse [sic][1] operating a massage business part-time. He also has a Florida real estate broker's license, although he does not realize any significant income from the real estate business. Laura Cohen, Debtor/Wife, has been a veterinarian since 1981 and is the sole shareholder of her veterinary practice, High Springs Animal Hospital, Inc. The Debtors acknowledge that the veterinary practice is their major source of income.

Debtors' primary assets are the veterinary clinic and equipment, their house, and thirty-nine acres of land on which their house is located. The Bank holds a claim against the Debtors in the amount of $324,235.18 secured by a lien on the Debtors' primary assets, the combined value of which has been stipulated to be $198,690. The Bank has restructured its loan agreements with the Debtors several times when the Debtors had difficulty making payments on time. After the Debtors defaulted several times, the Bank sought and obtained a judgment of foreclosure, and sale of the property was set for July 29, 1993.

On July 28, 1993, the day before the foreclosure sale, the Debtors filed a petition for relief under Chapter 11 of the Bankruptcy Code. In their schedules, Debtors listed the Bank as a secured creditor having a claim for $323,304, of which $121,414 was an unsecured deficiency. Iantha Whittaker, the mother of the debtor Robin Whittaker, was listed as an unsecured creditor holding a claim for $40,-000 for personal loans made to the Debtor/Husband. Mrs. Whittaker filed a proof of claim for "approximately $40,000."

On December 15, 1993, Debtors filed their first Plan & Disclosure Statement, in which the Bank was listed as holding a partially secured claim for $324,235.18.[2] Of that amount, $125,545.18 was unsecured and was included in Class 10, the general unsecured creditor class.[3] Under the Plan and Disclosure Statement, Mrs. Whittaker's unsecured claim was increased from its original $40,000 to $126,909.51 and was listed in Class 10; however, the plan provides that Mrs. Whittaker has agreed to forego distribution under the plan. The Bank objected to the Disclosure Statement, arguing that it failed to reflect the fact that Mrs. Whittaker waived participation as an unsecured creditor since she agreed to forego her share of the disbursement.

Listed as Class 8 in the first Plan and Disclosure Statement was the secured claim of ITT Financial Services for $4,000.00. The plan proposed that Debtors would avoid ITT's liens and treat the entire claim as wholly unsecured in Class 10, in which case there would be only two impaired classes voting on the plan: Class 6, the Bank, which would be expected to vote to reject the plan, and Class 10, the general unsecured creditors, of whom Mrs. Whittaker's "insider" vote could not be counted. 11 U.S.C. § 1129(a)(10).[4]

---

1. Although Webster's New Collegiate Dictionary (1977) defines masseuse as "a woman who practices massage and physiotherapy," Mr. Whittaker professes to be a masseuse.

2. The Debtors' plan proposes to treat the secured portion of the Bank's claim in Class 6 by amortizing the value of the collateral over 20 years

with interest. The Bank voted to reject this proposed treatment.

3. The Plan proposes to pay $30,000 plus "excess profits" over 5 years to Class 10 creditors, whose claims total $509,450.

4. One of the requirements to be met before the court shall confirm a plan is that

In February 1994, the Debtors filed an Amended Plan & Disclosure statement in which Mrs. Whittaker's unsecured claim was further increased to $145,845.72.[5] The Amended Plan emphasized the fact that Mrs. Whittaker intended to retain her right to vote as an unsecured creditor even though she would forego her share of the distribution of assets. The Debtors also amended Class 8 by abandoning their prior proposal to avoid ITT's liens and instead bifurcating the claim into (i) an impaired secured claim in the amount of $2,000.00, to remain in Class 8; and (ii) an unsecured claim in the amount of $2,000.00, to be treated in Class 10. This amendment has the effect of creating an impaired class that Debtors' assumed would vote to accept the plan, without including the votes of any insider, thus satisfying the requirement of § 1129(a)(10). The Amended Disclosure Statement was approved and confirmation was set for April 28, 1994.

The Bank objected to Mrs. Whittaker's initial and amended claims on the grounds that they lacked supporting evidence. The Bank also filed an Objection to the Confirmation of the Plan, arguing that (i) Mrs. Whittaker's claim is invalid and her vote should not be counted; (ii) confirmation of the plan should await determination of the issue of Mrs. Whittaker's vote; (iii) the plan is not feasible; and (iv) the plan is not fair and equitable to Class 10 unsecured creditors, who would allegedly receive more under Chapter 7.

At the confirmation hearing, the votes were tabulated and the plan was accepted by more than one half of the creditors voting and by at least two-thirds in dollar amounts of Class 10, if the acceptance of Mrs. Whittaker is counted in the full amount of her claim.[6] 11 U.S.C. § 1126(c). ITT voted to accept the plan, both as a Class 8 and a Class 10 creditor; the Bank voted to reject the plan, both as a Class 6 and a Class 10 creditor. Class 10's approval of the plan is tentative pending resolution of the issue of the validity of Mrs. Whittaker's claim and thus the eligibility of her vote, and the amount of her claim if she is entitled to a vote in Class 10.[7]

An evidentiary hearing was held on the Bank's objection to Mrs. Whittaker's claim on June 9, 1994. In what would normally be considered a strange twist, but not in this case, counsel for the Debtors appeared to support Mrs. Whittaker's claim. Mrs. Whittaker appeared as a witness, but was not represented by counsel. As a preliminary matter, at the beginning of the hearing I made a finding that based on the record in this case, as recited above, and on the lack of any supporting documentation with Mrs. Whittaker's proof of claim, the Bank as the objecting creditor would not be required to produce affirmative evidence to rebut the prima facie validity of the claim. *See, In re Circle J Dairy, Inc.*, 112 B.R. 297 (W.D.Ark. 1989). Therefore, the burden was on the claimant, Mrs. Whittaker, to prove the validity of her claim by a preponderance of the evidence. *Id.* at 299.

In support of her proof of claim, Mrs. Whittaker testified that since 1976, she had had made numerous loans to her son. As evidence of these loans, she produced photocopies of various checks, wire transfer re-

---

"[i]f a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider."
11 U.S.C. § 1129(a)(10). Mrs. Whittaker is an insider whose vote may not be included if no other impaired class votes to accept the plan.

5. Mrs. Whittaker filed an amendment on April 12, 1994, which increased her claim to $143,020.48, and to which no supporting documents were attached.

6. Mrs. Whittaker cast two ballots: one reflecting the sum of $143,020.48 as reflected in her amended proof of claim, and the other based on a claim of $145,845.72 as provided in the latest plan filed by the Debtors. The Debtors chose to utilize the higher amount in tabulating the vote although that amount had never been claimed.

7. Based on the claims voting in Class 10, Mrs. Whittaker's claim would need to be allowed to the extent of at least $97,168.80 for the two-thirds in dollar amount requirement to be met.

ceipts and promissory notes.[8] Mrs. Whittaker testified that she and son agreed that he would repay the loans when he was financially able to do so, and that if he was not financially able to repay the loans, the balance owed would be deducted from his inheritance when she died. Mrs. Whittaker also testified that her son had agreed to take care of her if she became unable to care for herself. At no time has Mrs. Whittaker made demand for payment on any of these "loans," and no payments have been made with the exception of 13 payments of $200.00 each between January, 1977, and May, 1978, on the promissory note dated January 15, 1976.

## DISCUSSION

■ The largest part of Mrs. Whittaker's claim is founded on three promissory notes: one with a determinable maturity date of November, 1981[9]; a second with a stated maturity date of May, 1983; and a third with no stated or determinable maturity date. Barnett Bank contends that the portion of the claim based on the three promissory notes is unenforceable because the notes are all barred by the applicable statute of limitations. The statute of limitations on an obligation "founded on a written instrument" is five years. Fla.Stat. § 95.11(2)(b).

■ The terms of the first note provided for payment of monthly installments of $200, the last of which would be paid in November, 1981. The statute of limitations is tolled while payments are being made on an installment note. Fla.Stat. § 95.051(f). Upon accrual of a cause of action, e.g. defaulting on a promissory note, the statute of limitations period begins to run. Fla.Stat. § 95.031. The Debtor/Husband last paid an installment on the first note on May 15, 1978. Thus he was in default on the first promissory note on June 15, 1978, which is the date a cause of action accrued on the note. The limitations period began to run on the first promissory note on June 15, 1978, more than five years prior to the commencement of this case. Therefore, enforcement of the first promissory note is barred and it cannot be a part of the allowed claim.

Debtor/Husband defaulted on the second promissory note in May, 1983, the stated maturity date of the note, by failing to pay it. The limitations period began to run on the second note when the cause of action accrued in May, 1983, also more than five years prior to commencement of this case. Fla.Stat. § 95.031. Therefore, any claim based on this promissory note is likewise barred by the statute of limitations.

8. Mrs. Whittaker claims to have made the following loans to her son, the Debtor/Husband:

| Date | Amount | Evidenced By | Interest/Due Date | Balance |
|---|---|---|---|---|
| 1/15/76 | $10,000 | Promissory note | 7%; due 11/81 | $13,826.98 |
| 4/4/80 | 1,000 | Ledger annotation | | 1,000 |
| 5/9/80 | 2,300 | Cashier's check | | 2,300 |
| 12/10/80 | 1,000 | Wire transfer | | 1,000 |
| 1/8/81 | 2,000 | Wire transfer | | 2,000 |
| 2/11/81 | 12,000 | Wire transfer | | 12,000 |
| 2/24/81 | 28,500 | Promissory note | 14%; no due date | 78,096.25 |
| 12/3/82 | 5,000 | Promissory note | 15%; due 5/83 | 12,997.26 |
| 11/3/88 | 3,000 | Wire transfer | | 3,000 |
| 1/9/89 | 4,000 | Check | | 4,000 |
| 11/10/89 | 4,000 | Cashier's check | | 4,000 |
| 1/9/90 | 5,000 | Ledger annotation | | 5,000 |
| 3/16/90 | 3,800 | Check | | 3,800 |

At the evidentiary hearing, Mrs. Whittaker introduced evidence of two additional loans: a check for $100, dated 3/5/90; and a check for $500, dated 1/30/92. She also testified as to an undocumented loan for $5,000 made in 1992. Inasmuch as none of these alleged loans were previously listed on a proof of claim, they will not be considered as part of her claim.

9. The terms of the note provided for monthly payments of $200 until the last installment date of November 15, 1981. Debtors last paid an installment of $200 on May 15, 1978.

■ The third promissory note, which "[d]oes not state any time of payment," is "payable on demand" pursuant to F.S. § 673.1081. The statute of limitations begins to run from the date the cause of action accrues. F.S. § 95.031. A cause of action on a "note payable on demand" accrues at the time of the first written demand for payment. F.S. § 95.031(1). Mrs. Whittaker argues that since she made no demand for payment, no cause of action has accrued and that, therefore, the limitations period has not yet begun to run. This argument emasculates the purpose of the statute of limitations and is contrary to Florida law.

■ A creditor may not wait an indefinite period of time before making demand on the Debtor. "[W]here a demand or some other act is required of a plaintiff as a condition precedent to his right to sue, 'the demand must be made in a reasonable time, and this time, unless there be some special circumstances shown, will be fixed in analogy to the statute of limitations.'" *Stoudenmire v. Fla. Loan Co.*, 117 So.2d 500, 502 (Fla. 1st DCA 1960), citing *Smith v. Middle States Utility Co.*, 228 Iowa 686, 293 N.W. 59 (1940). "Reasonable time" is a fact to be determined by the circumstances of each individual case. In this case, there are no special circumstances that would warrant extending "reasonable time" beyond the period provided for by the statute of limitations. Accordingly, the Court shall fix the time for demand on the third promissory note as February 24, 1986, five years after the date of the note. The statute of limitations began to run on that date and expired five years later on February 24, 1991. Therefore, this promissory notes is also barred by the statute of limitations.

■ The balance of Mrs. Whittaker's claim ($38,100) is based on oral agreements with the Debtor/Husband. There is no evidence of any due date on these obligations, which are evidenced merely by copies of checks, wire transfers, and ledger annotations. The absence of a due date, however, does not invalidate an oral promise to pay money. *See, e.g.,* Fla.Stat. § 673.1081 (absent due date, promise is "payable on demand").

■ In Florida, the statute of limitations on oral contracts is four years. Fla. Stat. § 95.11(3)(k). The limitations period begins to run from the time the cause of action accrues. Fla.Stat. § 95.031. Evidence introduced at the hearing indicates that repayment under the oral contracts was conditioned on the Debtor's ability to pay, and that the Debtor has not yet satisfied this condition. Therefore, no cause of action has yet accrued, and the statute of limitations has not yet begun to run on the oral agreements.

■ Florida courts have held that an agreement to repay a loan "when able" creates a "conditional promise to pay, so that the creditor is not entitled to recover on the promise unless the promisor is in fact able to pay the debt." *Hammond v. Bicknell*, 379 So.2d 680, 681 (Fla. 2nd DCA 1980); *Zane v. Mavrides*, 394 So.2d 197 (Fla. 4th DCA 1981) (adopting holding of *Hammond, supra*). The parties do not dispute that the Debtor/Husband has been financially unable to repay the loans to Mrs. Whittaker. Since the condition has not been met, the oral agreements do not establish currently enforceable claims but merely contingent claims.

■ The Bank argues that Mrs. Whittaker's claims based on the oral agreements should not be allowed because the claims are based on unenforceable agreements. The Bank overlooks the fact that some unenforceable claims may nevertheless be allowable in bankruptcy. "In enacting the Bankruptcy Code of 1978, Congress intended that all claims, including unliquidated and contingent claims, be 'dealt with' in the bankruptcy proceeding." *Matter of Brints Cotton Marketing*, 737 F.2d 1338, 1340 (5th Cir.1984), *citing* S.Rep. No. 989, 95th Cong., 2d Sess. 22. A contingent claim, which may be allowed in bankruptcy, is defined as one whose existence or amount depends upon some future event uncertain as to its time of occurrence. *In re Gladding Corp.*, 20 B.R. 566, 567 (D.Mass.1982). Enforcement of Mrs. Whittaker's claim for $38,100 is contingent upon the Debtor/Husband's having the ability to repay the loans. The contingency having not occurred, Mrs. Whittaker has an allowable but contingent claim in an amount no greater than $38,100.

Since Mrs. Whittaker's claim has been reduced to a maximum of $38,100, well below the $97,168.80 that would be required for her vote to produce an acceptance by Class 10, I need go no further. If, however, her contingent claim exceeded that amount, a determination of the acceptance or rejection of the plan by that class would require further proceedings. While Mrs. Whittaker's claim may be allowable, it remains contingent. Section 502(c) provides that:

(c) There shall be estimated for purpose of allowance under this section—

(1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case;

11 U.S.C. § 502(c). I would, therefore, be required to estimate Mrs. Whittaker's claim to determine the value of her vote on the plan if the amount would affect the outcome of the vote. Also, if distribution under the plan were dependent upon a determination of the amount to be distributed to all the creditors, estimation may be required. Since Mrs. Whittaker is not seeking any distribution under the plan, and her vote, even if counted for $38,100, would not change the outcome of the voting, her claim need not be estimated at this time.

Based on the foregoing, it is accordingly,

ORDERED AND ADJUDGED that,

1. The objection of Barnett Bank of Alachua County, N.A. to the claim of Iantha Whittaker be and same is GRANTED in part and DENIED in part.

2. The claim of Iantha Whittaker is hereby allowed as a contingent claim in the maximum amount of $38,100.

DONE AND ORDERED.