**In re Lynn Williams WILBUR, Debtor.**

**Bankruptcy No. 96–07080–6J7.**

United States Bankruptcy Court, M.D. Florida, Orlando Division.

May 7, 1999.

Stephen R. Caplan, Orlando, Florida, for debtor.

Leigh R. Meininger, Orlando, Florida, trustee.

*FINDINGS OF FACT AND CONCLU-SIONS OF LAW ON THE DEBT-OR'S MOTION TO REOPEN CASE TO ADD OMITTED CREDITORS*

KAREN S. JENNEMANN, Bankruptcy Judge.

This case came on for hearing on January 19, 1999, on the Verified Motion to Reopen Chapter 7 Bankruptcy Case to Add Omitted Creditors (the "Motion") filed by Lynn Williams Wilbur (the "Debtor") (Doc. No. 16). Gulf Insurance Company ("Gulf"), an omitted creditor, has filed an objection to the Debtor's Motion (Doc. No. 18) and a Brief of Supplemental Authority (Doc. No. 29). The Debtor also has filed a Memorandum of Law in support of the Motion (Doc. No. 28). Another omitted creditor, Ten Hoeve Bros., Inc. ("THB"), appeared at the hearing in opposition to the Motion but filed no written response. On January 26, 1999, the Court entered an Order Conditionally Granting Motion to Reopen Case with respect to all other creditors named in the Debtor's Motion (Doc. No. 23). After considering the pleadings, oral arguments, and positions of

interested parties, the Motion is granted with respect to the omitted creditor Gulf but is denied with respect to creditor THB.

*Undisputed Facts.* The Debtor's husband, George Wilbur, previously owned and operated a company called G.T. Environmental Services, Inc. ("GTES"). GTES was in the business of completing large environmental remediation projects. The Debtor had no involvement with her husband's business. When the Debtor filed her Chapter 7 case on October 29, 1996 (the "Petition Date"), she did not list on her schedules any debts relating to GTES. The Debtor's case proceeded as a no-asset case, and no distribution was made to creditors. The Debtor received a discharge of her debts on February 20, 1997 (Doc. No. 12), and the case was closed on March 17, 1997 (Doc. No. 14).

Over one year later, the Debtor filed this Motion to Reopen case to Add Omitted Creditors naming Gulf and THB as well as several other creditors. Gulf and THB were the only creditors to oppose the Motion. Accordingly, an Order Conditionally Granting the Motion to Reopen with respect to the other named creditors was entered (Doc. No. 23). The only remaining issue is whether the Debtor has established sufficient cause to add Gulf and THB as previously omitted creditors. Both Gulf's and THB's claims against the Debtor arise out of transactions with Mr. Wilbur's company, GTES.

*Gulf's Indemnity Agreement.* In order to obtain bonding insurance for GTES, both Mr. Wilbur and the Debtor individually signed a General Agreement of Indemnity (the "Agreement") with Gulf on July 18, 1994, years before the Debtor's bankruptcy. (Gulf's Exhibit 1A.) Gulf's bonds insured two projects on which GTES worked. Problems with GTES' work on these projects did not arise until *after* the Debtor's bankruptcy case was filed. Specifically, GTES's work on the projects covered by Gulf's bonds was determined deficient in April and May, 1997.

At that time, several parties filed claims under the bonds issued by Gulf. Gulf paid these claims beginning in May of 1997, several months after the Debtor's discharge.

*THB's Judgment.* GTES also transacted business with THB prior to the Debtor's bankruptcy. In the course of its business, GTES ordered certain goods from THB but failed to pay for them. In January 1997, the parties settled their payment dispute. GTES agreed to start making regular payments to THB. However, GTES did not make the payments as agreed, and THB sued GTES. During this litigation, the state court found that, during March 1997, GTES had received over $30,000 which was deposited into its corporate account. Instead of making the required payments to THB, the Wilburs used the money to pay for their personal expenses. On June 4, 1998, a judgment was entered against the Debtor for these fraudulent transfers in the amount of $13,327.77 (the "Judgment"). (THB's Exhibit No. 1.) Prior to June 4, 1998, the Debtor had no individual liability of any kind payable to THB.

*Arguments.* Both creditors argue that the Debtor should not be allowed to reopen her case to list them as creditors because their claims arose *after* the Debtor filed her bankruptcy petition. As such, the creditors argue that the claims are not dischargeable in the Debtor's bankruptcy and, therefore, she has not shown cause to reopen her case.

Gulf asserts that it did not have a claim as of the Petition Date because its right to payment did not arise until it actually paid the claims arising under the bond. The Debtor argues that Gulf's claim arose when the Agreement was executed, even though payment was conditioned on a future event.

Similarly, THB argues that, because the Debtor was not liable to THB until the Judgment was rendered against her on June 4, 1998, THB did not have a claim

against her on the Petition Date. The Debtor argues in response that THB's claim arose before her bankruptcy, when the goods were delivered to GTES.

■ *Standard for Reopening Case to Add Omitted Creditor.* Section 350 of the Bankruptcy Code [1] provides that the court may reopen a case based on equitable principles in order to "administer assets, to accord relief to the debtor or for other cause." 11 U.S.C. § 350 (1998). A debtor will be allowed to reopen his/her case to schedule an omitted creditor as long as (i) the failure to schedule the creditor was the result of an honest mistake and not fraud or intentional design, and (ii) the creditor is not prejudiced by the reopening. *Samuel v. Baitcher (In the Matter of Baitcher)*, 781 F.2d 1529, 1534 (11th Cir.1986); *Rosinski v. Boyd (In re Rosinski)*, 759 F.2d 539, 541 (6th Cir.1985).

■ The Debtor claims that she acted innocently in omitting these creditors from her schedules because she was not involved in her husband's business and did not list any debts relating to GTES. Neither creditors dispute this point. Similarly, neither creditor has argued that reopening the case would prejudice them. However, in order for the claims of these creditors to be included in the Debtor's discharge they must have existed prior to the Debtor's filing her petition for relief. 11 U.S.C. § 727(b) (1998). Both Gulf and THB argue that the Debtor has failed to show that they held a claim against Debtor as of the Petition Date and, as a result, that the Debtor has demonstrated cause to add them as creditors.

■ *Definition of a Claim.* Section 101(5) of the Bankruptcy Code provides a broad definition of claim. Section 101(5) provides that a claim is a:

right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured,

unmatured, disputed, undisputed, legal, equitable, secured or unsecured;

11 U.S.C. § 101(5) (1998). Congress deliberately adopted the broadest available definition of claim to allow bankruptcy courts to provide the broadest possible relief. *Johnson v. Home State Bank,* 501 U.S. 78, 83, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991); *St. Laurent, II v. Ambrose (In re St. Laurent, II),* 991 F.2d 672, 678 (11th Cir.1993); *Woburn Associates v. Kahn (In re Hemingway Transport, Inc.),* 954 F.2d 1, 8 (1st Cir.1992); *In re Eli Witt Company,* 216 B.R. 672, 674 (Bankr.M.D.Fla.1997). Congress clearly intended to provide debtors with a fresh start. *Ohio v. Kovacs,* 469 U.S. 274, 281, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985).

■ *THB's Claim Did Not Exist Prepetition.* THB argues that its claim did not arise until after the Debtor filed her bankruptcy petition. GTES did business with the THB prior to the Debtor's bankruptcy petition, and GTES was delinquent in paying for the goods received. The Debtor argues that because GTES owed THB these sums before the Debtor's bankruptcy and because her liability is attributable to GTES' failure to pay for these goods, the claim arose prior to the bankruptcy. The Debtor argues that the claim already existed and that the judgment merely liquidated the claim.

The Debtor's argument is without merit. Clearly, THB had a claim against GTES prior to the Debtor's bankruptcy. THB supplied certain goods to GTES in March 1996. By May 1996, GTES owed THB for these goods. The Debtor did not file her bankruptcy case until October 1996. Therefore, THB did have a claim prior to the Debtor's bankruptcy; however, their claim was against GTES, not the Debtor.

THB's claim against the Debtor did not arise until after her the Petition Date. First, THB's claim against the Debtor is

---

1. Unless specified otherwise, all references to statutory sections refer to Title 11 of the United States Code.

based on the Judgment rendered in June 1998. The Judgment was entered long after the Debtor filed bankruptcy. Second, the basis for the Judgment was that the Debtor had fraudulently withdrew funds from GTES to pay for her personal expenses. In essence, the state court found the Debtor had stolen funds from GTES which rightfully belonged to THB. THB's claim against the Debtor arose at the time she committed this fraudulent act which, at the earliest, occurred in March 1997, several months *after* the Petition Date. THB's claim against the Debtor arose after she filed bankruptcy. As such, the Debtor is not entitled to a discharge of THB's debt and has failed to show cause for reopening her case to add THB as an omitted creditor. The Debtor's Motion with respect to THB is denied.

■ *Gulf's Claim Existed Pre-petition.* Gulf similarly argues that its claim against the Debtor is not dischargeable because the claim arose post-petition, when Gulf paid certain claimants under the performance bonds issued to GTES. The Debtor however is obligated to indemnify Gulf according to the Agreement that was signed in July 1994, years before this case was filed. Accordingly, the Debtor argues that Gulf has a pre-petition claim that is dischargeable. The issue is whether Gulf's claim arose when the Agreement was signed or when Gulf paid claims arising under the performance bonds. The Court finds that Gulf's claim arose when the Agreement was signed.

■ The definition of claim provided in § 101(5) specifically includes contingent claims. The courts have held that federal law, not state law, governs the question of when a claim arises under the bankruptcy code. *Siegel v. Federal Home Loan Mortgage Corporation,* 143 F.3d 525, 532 (9th Cir.1998); *Hassanally v. Republic Bank*

*(In re Hassanally),* 208 B.R. 46, 50 (9th Cir. BAP 1997). *See also Johnson,* 501 U.S. at 83, 111 S.Ct. 2150 (holding that whether an interest is a claim should be decided "by reference to 'the text history, and purpose' of the Bankruptcy Code") (quoting *Farrey v. Sanderfoot,* 500 U.S. 291, 298, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991)). Under federal law, contingent claims are those which become due only upon the occurrence of a future event which will trigger the liability of the debtor to the alleged creditor and which was within the actual or presumed contemplation of the parties at the time the relationship was created. *Siegel,* 143 F.3d at 532; *Big Yank Corporation v. Liberty Mutual Fire Insurance (In re Water Valley Finishing, Inc.),* 139 F.3d 325, 328 (2nd Cir. 1998); *In re Whittaker,* 177 B.R. 360 (Bankr.N.D.Fla.1994); *In re All Media Properties, Inc.,* 5 B.R. 126, 133 (Bankr. S.D.Tex.1980). Furthermore, any doubt as to the existence of a claim should be resolved in favor of finding that a contingent claim existed. *Siegel,* 143 F.3d at 532; *Employee's Retirement System v. Osborne (In re THC Financial Corp.),* 686 F.2d 799 (9th Cir.1982).

Neither party has cited any Florida or Eleventh Circuit cases which consider this issue. However, other circuits have considered the issue and consistently have held that an indemnification agreement creates a contingent claim as of the date the agreement is signed. *Hemingway Transport, Inc.,* 954 F.2d at 8; *Travelers Insurance Company v. Cambridge Meridian Group, Inc. (In re Erin Food Services, Inc.),* 980 F.2d 792, 796 (1st Cir.1992); *Avellino & Bienes v. M. Frenville Co., Inc. (Matter of M. Frenville Co., Inc.),* 744 F.2d 332, 336 (3rd Cir.1984) *cert. denied* 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985);[2] *THC Financial Corp.,* 686 F.2d at 803.

**2.** *Frenville* has been heavily criticized and rejected by a majority of courts for its holding that state law decides when a claim arises. *See Epstein v. Official Committee of Unsecured Creditors (In re Piper Aircraft Corp.),* 58 F.3d

1573 (11th Cir.1995). However, this holding dealt with an indemnification claim that was not based on an agreement. Even the Court in *Frenville* concedes that in the case of an indemnification agreement, the claim, al-

In *Hemingway Transport, Inc.*, the debtor leased a parcel of real estate from Woburn. 954 F.2d at 3. The lease contained an indemnification clause whereby the debtor agreed to indemnify Woburn for all attorney fees incurred as a result of Hemingway's occupation of the property. *Id.* After the debtor filed bankruptcy, the Environmental Protection Agency issued an order to clean up environmental problems. *Id.* The landlord, in turn, looked towards the debtor for indemnification of these cleanup costs. *Id.* at 4. Woburn prevailed in an adversary proceeding and was awarded a judgment against the debtor. *Id.* The United States Court of Appeals for the First Circuit further found that, based on the indemnity agreement, Woburn held a pre-petition claim.[3] *Id.* at 8. The court held that:

> [T]he term "claim" is broad enough to encompass an unliquidated, contingent right to payment under a pre-petition indemnification agreement executed by the debtor, even though the triggering contingency does not occur until after the filing of the petition under the Bankruptcy Code.

*Id.* The United States Courts of Appeals for the Third and Ninth Circuits have agreed. *See M. Frenville Co.*, 744 F.2d at 336 ("When parties agree in advance that one party will indemnify the other party in the event of a certain occurrence, there exists a right to payment, albeit contingent, upon the signing of the agreement."); *THC Financial Corp.*, 686 F.2d at 803.

Although the Eleventh Circuit Court of Appeals has not addressed the issue of when a claim arises under an indemnity agreement, Florida bankruptcy courts consistently have found contingent claims in very similar situations. For example, in *Kirkpatrick v. Kogan (In re Kirkpatrick)*, 216 B.R. 663, 666 (Bankr.M.D.Fla.1997), the court held that a pre-petition claim existed when the creditors held a claim

against the debtor for attorney fees arising out of a lawsuit initiated pre-petition, even though the attorney fees actually were awarded post-petition. Similarly, in *In re Peltz*, 55 B.R. 336, 338 (Bankr.M.D.Fla. 1985), the court held that when parties agree in advance that one will pay the other liquidated damages upon the occurrence of a future event, a contingent right to payment exists upon the signing of the agreement. *See also Wayne H. Coloney Company, Inc. v. United States Department of the Air Force*, 89 B.R. 924, 929 (Bankr.N.D.Fla.1988) (holding that "a 'claim' or 'right to payment' under a written agreement arises when the agreement is executed regardless of whether the right to payment is contingent, disputed, unliquidated, or not presently payable.")

The Eleventh Circuit also has defined "claim" broadly. In *Epstein v. Official Committee of Unsecured Creditors (In re Piper Aircraft, Corp.)*, 58 F.3d 1573, 1577 (11th Cir.1995), the court applied a conduct test to determine whether future tort claimants had a claim on the debtor's bankruptcy case. The court held that an individual has a claim against a manufacturer if (i) events occurring before confirmation create a relationship, such as contact, exposure, impact or privity, between the claimant and the debtor's product; and (ii) the basis for liability is the debtor's pre-petition conduct in designing, manufacturing and selling the allegedly defective or dangerous product. *Id.* Although this test is not directly applicable to these facts, the language demonstrates the liberality to which the Eleventh Circuit is willing to find that pre-petition claims exist.

In this case, the Debtor signed an indemnity agreement with Gulf prior to filing bankruptcy, in exchange for the issuance of two performance bonds necessary to insure the work of her husband's com-

---

though contingent, arises upon the signing of the agreement. 744 F.2d at 336.

3. However, the court would go on to allow Woburn's claim as a general unsecured claim on other grounds.

pany, GTES. Under the Agreement, the Debtor indemnified Gulf in the case of any claim made against the bonds. Accordingly, Gulf had a contingent claim prior to the Debtor's bankruptcy. The Debtor and Gulf had an agreement under which the Debtor would become liable to Gulf upon the happening of a future event and this event was contemplated by the parties at the time they made the Agreement. Section 101(5)'s definition of claim specifically includes contingent claims. Furthermore, the Court is persuaded by the decisions of the United States Courts of Appeals for the First, Third and Ninth Circuits, the only Circuit Court decisions on this issue.

Gulf argues that under the language of its Agreement and under the definition of indemnity found in *Houdaille Industries v. Edwards,* 374 So.2d 490 (Fla.1979) and *Allstate Insurance Company v. Metropolitan Dade County,* 436 So.2d 976 (Fla.3rd DCA 1983),[4] the Debtor's liability to Gulf did not arise until Gulf paid claims made upon the bonds. As such, Gulf argues that its claim did not arise until after the Debtor's bankruptcy, when it paid the claims.[5] Gulf's argument has no merit.

 Federal, not state law, controls the issue of when a claim arises for the purposes of bankruptcy. *Siegel,* 143 F.3d at 532. As the cases above clearly demonstrate, under federal law, an indemnity agreement creates a contingent claim as of the date of the agreement. *See Hemingway Transport, Inc.,* 954 F.2d at 8. Furthermore, Gulf's Agreement with the Debtor fits squarely within the definition of a contingent claim. Such a claim is specifically included in § 101(5). Therefore, Gulf's claim against the Debtor arose pre-petition. As such, the Debtor has presented good cause to reopen her case. Gulf has not presented any reason to deny her Motion.

*Conclusion.* THB's claim against the Debtor did not arise until after the Debtor's bankruptcy. As such, the Debtor has not presented any cause for reopening her case, and the Debtor's Motion with respect to omitted creditor THB is denied (Doc. No. 16). On the other hand, Gulf's claim *did* arise prior to the Petition Date, and the Debtor has presented cause for reopening her case to add Gulf as an omitted creditor. Therefore, the Debtor's Motion with respect to creditor Gulf is granted (Doc. No. 16).

Within ten (10) days of the entry of the order, the Debtor must file amended schedules listing the debt due to Gulf along with the prescribed $20 amendment to Debtor' schedules fee payable to the Clerk (if not presented with the "Motion"). However, Gulf, as a newly added creditor, has the right to participate in the Debtor's bankruptcy by filing a claim or complaint challenging the Debtor's discharge or the dischargeability of Gulf's claim. If Gulf believes that the debt is not dischargeable, then Gulf must file a complaint to determine the dischargeability of the debt on or before 60 days from the entry of the order. A separate order consistent with this Findings of Fact and Conclusions of law shall be entered.

---

4. In *Allstate Insurance,* the court held that a contractual right to indemnification does not vest until payment is made. 436 So.2d at 978.

5. Gulf also cited several other Florida cases defining and analyzing when liability is incurred under an indemnity agreement. An analysis of these cases is not necessary because federal law rather than state law determines when a claim arises.